OPINION *Page 2 
{¶ 1} Defendant-appellant Eric Fain appeals from his conviction and sentence entered by the Delaware County Court of Common Pleas, on one count of possession of cocaine with a forfeiture specification, and one count of trafficking in marijuana in the vicinity of a school with a forfeiture specification, following a jury trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On July 14, 2006, the Delaware County Grand Jury returned a three count Indictment against Appellant. Count one charged Appellant with trafficking in cocaine with a forfeiture specification, which further alleged the offense was committed in the vicinity of a school. Count two charged Appellant with possession of cocaine with a forfeiture specification, with the amount of cocaine being 10.7 grams. Count three charged Appellant with trafficking in marijuana with a forfeiture specification, and further alleged the offense was committed in the vicinity of a school. The forfeiture specification alleged the cash found on Appellant, to wit: $1,211.10, was proceeds from the commission of a felony drug abuse offense. Appellant appeared before the trial court for arraignment on July 19, 2006, and entered a plea of not guilty.
 {¶ 3} Appellant filed a motion to suppress, alleging the stop of the motor vehicle he was operating at the time of his arrest violated his constitutional rights because the officer did not have a reasonable, articuable suspicion Appellant had committed a criminal act. Appellant sought the suppression of any and all evidence obtained during the search of the vehicle. The trial court conducted a hearing on the motion on October 5, 2006. *Page 3 
 {¶ 4} At the hearing, Delaware Police Officer Chris Cox testified he was on duty in a marked vehicle at approximately 1:00 a.m. on June 27, 2006, when he observed Appellant traveling northbound on South Liberty Street, crossing Williams Street, in Delaware, Ohio. Officer Cox was stopped at a red light at the intersection of Williams Street and Liberty Street, heading west on Williams. Although Appellant had the green light, Officer Cox believed the vehicle was traveling at a very high rate of speed. The officer observed the vehicle brake lights illuminate in what he perceived to be an effort to stop or slow the vehicle. Officer Cox estimated Appellant's speed to be approximately 40 to 45 mph in a 25 mph zone. He was unable to get a speed detection device reading on Appellant's vehicle.
 {¶ 5} As a result of his observations, Officer Cox turned his cruiser northbound and followed Appellant. Appellant stopped his vehicle at a red light at the intersection of North Liberty Street and West Central. When the light turned green, Appellant turned westbound on Central toward Liberty. Officer Cox followed Appellant and observed the vehicle swerving within its lane. Officer Cox also observed the vehicle weaving a few times, and the weaves spanned the entire width of the lane. The officer noted the vehicle did not cross over the center line, but the tires touched the center line, then weaved back to the solid line on the edge of the roadway.
 {¶ 6} Appellant and Officer Cox came to a red light at an intersection on Elizabeth Street. When the light turned green, the rear tires of Appellant's vehicle "kind of shook back and forth a little bit * * * like it was trying to get traction". Officer Cox stated it had rained earlier in the evening and there were still some wet areas on the roadways. Officer Cox testified he observed the rear end of Appellant's vehicle sway *Page 4 
back and forth while the front end remained stationary. This occurred for a couple of seconds. Officer Cox proceeded to follow Appellant and observed more weaving within his lane of travel. Appellant continued northbound on Troy Road, turning east on Georgetown Drive. At that point, Officer Cox activated his cruiser's overhead lights.
 {¶ 7} Appellant continued traveling on Georgetown Drive until the road turned northbound. A parking lot is located at that turn, and Appellant drove east into the parking lot until the lot ended and he had no where to go. Appellant stopped his vehicle, opened the door, and poked his head out and looked at the officer. Officer Cox noted Appellant "started messing with something in the passenger's side". The officer also recalled, as Appellant drove into the parking lot, the back tires of the car ran over the curb which separated the parking lot from the roadway. Officer Cox ordered Appellant back into the car, but Appellant kept asking him, "Why?". Because Appellant was still fidgeting with something in the passenger's seat, Officer Cox removed his gun and ordered him back into the car.
 {¶ 8} Upon conclusion of Officer's Cox testimony, the trial court found, under the totality of the circumstances, the officer had reasonable suspicion to stop Appellant's vehicle. The trial court denied Appellant's motion to suppress.
 {¶ 9} The matter proceeded to trial on November 7, 2006. At trial, Officer Cox testified about the circumstances surrounding the stop of Appellant's vehicle. Officer Cox testimony mirrored the testimony he gave at the suppression hearing. In addition, the officer utilized a map to show the area of the city where he followed Appellant on the evening of the arrest. The map included lines which depicted a 1000 foot area around *Page 5 
school property. Officer Cox indicated the automobile which Appellant was driving was registered to another individual.
 {¶ 10} The officer detailed the items found during the search of Appellant and the vehicle. Officer Childs, who backed up Officer Cox, searched Appellant's left pants pocket, and found $1,190 in cash, a Trojan Magnum condom, a set of blue dice, and a cigarette lighter. Officer Cox searched Appellant's right pants pocket, and found $21.00 in cash, a pocket knife, a cell phone with a black cover, and a clear plastic baggy with a small amount of green leafy substance which the officer believed to be marijuana. When Officer Cox turned on the cell phone, he observed a picture of a plant which appeared to be a marijuana plant.
 {¶ 11} Inside the vehicle on the floorboard, Officer Cox found a white container filled with loose leaf tobacco and a brown cigar wrapper. The officer also found a cigar filled with marijuana, as well as a grey and silver cell phone and a black backpack on the passenger seat. Officer Cox testified he was able to retrieve a message on the cell phone, which was sent to Appellant earlier on the evening of the arrest. The message was from a female, who identified herself as "Jenny," and stated she hoped Appellant would stop by and she owed him $70.00. In the outside pockets of the backpack found on the passenger seat, Officer Cox found personal items, such as dental floss and deodorant. These items were returned to Appellant, who accepted them. Inside the pack, the officer recovered a Royal Crown bag containing a plastic baggy, a digital weight scale, a box of Trojan Magnum condoms, two cell phone chargers, and a disposable camera. The photographs from the disposable camera were subsequently developed. The photographs depicted an unidentified black male and Appellant holding *Page 6 
large amounts of cash in their hands. Appellant was arrested and transported to the police station for processing. Officer Valverde conducted a more through search of the backpack and found a clear plastic storage bag holding a clump of dry green vegetation, which was later identified as approximately 60 grams of marijuana; a golf ball size clump of white powder, which was later identified as cocaine; and an Eggo waffle box containing magazine paper and clear plastic baggies.
 {¶ 12} Beverly A. Wiltshire, a forensic scientist in a chemistry section of the Ohio Bureau of Criminal Identification and Investigation, testified she tested and analyzed the substances sent to her by the Delaware Police Department in connection with Appellant's arrest. Wiltshire confirmed the leafy vegetation was, in fact, marijuana and the white powdery substance was cocaine.
 {¶ 13} Sgt. Mark Leatherman of the Delaware City Police Department testified he has 21 years experience in law enforcement. For just under 10 years, Sgt. Leatherman worked as a detective with the police department as well as an investigator with the Delaware County Drug Task Force. The sergeant testified, in his experience, drug traffickers frequently use vehicles belonging to other persons or leased rental cars in order to avoid the property being forfeited. Sgt. Leatherman also noted it is common for drug traffickers to use multiple cell phones. Frequently, the owner of the cell phone is not the perpetrator. Sgt. Leatherman further testified as to drug traffickers' use of glossy magazine pages, plastic sandwich bags, and digital scales in the selling of drugs. The sergeant described the street value of drugs found in Appellant's possession as well as the methods used to prepare marijuana and cocaine for street sale. *Page 7 
 {¶ 14} After hearing all the evidence and deliberations, the jury found Appellant guilty on all three counts and also found the cash, which was subject to the forfeiture specification, was obtained through the commission of a felony drug offense; therefore, should be forfeited. The trial court sentenced Appellant to a period of incarceration of five years on count one and one year on count three. The trial court ordered the sentences run concurrently. In accordance with R.C. 2941.25 (A), the trial court did not enter a sentence on count two.
 {¶ 15} It is from this conviction and sentence Appellant appeals, raising the following assignments of error:
 {¶ 16} "I. THE TRIAL COURT ERRED WHEN IT DENIED THE APPELLANT'S MOTION TO SUPPRESS EVIDENCE.
 {¶ 17} "II. THERE WAS INSUFFICIENT EVIDENCE AS A MATTER OF LAW TO SUSTAIN THE JURY'S VERDICT OF GUILTY ON ALL THREE COUNTS.
 {¶ 18} "III. THE JURY'S VERDICT ON ALL THREE COUNTS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT THE TRIAL IN THIS MATTER."
 I {¶ 19} In his first assignment of error, Appellant maintains the trial court erred in denying his motion to suppress.
 {¶ 20} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See, State v.Fanning *Page 8 
(1982), 1 Ohio St.3d 19, 437 N.E .2d 583; State v. Klein (1991),73 Ohio App.3d 486, 597 N.E.2d 1141; State v. Guysinger (1993),86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams (1993),86 Ohio App.3d 37, 619 N.E.2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994),95 Ohio App.3d 93, 641 N.E.2d 1172; State v. Claytor (1993), 85 Ohio App .3d 623, 620 N.E.2d 906; Guysinger, supra. As the United States Supreme Court held in Ornelas v. U.S., (1996), 517 U.S. 690, 116 S.Ct. 1657, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 21} In a motion to suppress, the trial court assumes the role of trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. Guysinger, supra, at 594 (citations omitted). Accordingly, an appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Id., citing State v. Fausnaugh (Apr. 30, 1992), Ross App. No. 1778, 1992 W L 91647. *Page 9 
 {¶ 22} Herein, Appellant contends Officer Cox did not have a sufficient legal basis upon which to stop Appellant.
 {¶ 23} "Before a law enforcement officer may stop a vehicle, the officer must have a reasonable suspicion, based upon specific and articulable facts that an occupant is or has been engaged in criminal activity." State v. Gedeon (1992), 81 Ohio App.3d 617, 618. Reasonable suspicion constitutes something less than probable cause. State v.Carlson (1995), 102 Ohio App.3d 585, 590. "[I]f the specific and articulable facts available to an officer indicate that a motorist may be committing a criminal act, * * * the officer is justified in making an investigative stop." Id. at 593. The propriety of an investigative stop must be viewed in light of the totality of the circumstances.State v. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus.
 {¶ 24} Thus, if the specific and articulable facts indicate to the officer the driver of an automobile may be committing a criminal act, which includes a violation of a traffic law, the officer can justifiably make an investigative stop. State v. Carlson (1995),102 Ohio App.3d 585, 593, 657 N.E.2d 591. In a situation where the officer has observed a traffic violation, the stop is constitutionally valid. Dayton v.Erickson (1996), 76 Ohio St.3d 3, 9, 665 N.E.2d 1091.
 {¶ 25} At the hearing on the motion to suppress, Officer Cox stated his attention was initially drawn to Appellant after observing Appellant's vehicle traveling approximately 40-45 mph in a 25 mph zone. Officer Cox was unable to obtain a specific speed through the use of a speed detection device, however, was able to estimate the speed through his training and experience. As Officer Cox followed Appellant, he observed Appellant's vehicle weaving within its lane on more than one occasion. *Page 10 
Although conceding it had rained earlier in the evening, Officer Cox saw the rear wheels of Appellant's vehicle spin, shaking back and forth, as if trying to get traction. The trial court found, based upon the totality of the circumstances, Officer Cox had reasonable suspicion to stop Appellant's vehicle.
 {¶ 26} An officer's observation of a defendant traveling at a rate of speed greater than the posted speed limit is sufficient to sustain a conviction of speeding. See, e.g., Cincinnati v. Dowling (1987)36 Ohio App. 3d 198; State v. Wilson (1996), 9th District No. 95CA006285, unreported. Because an officer's testimony of a vehicle's speed can, if believed, satisfy the standard of proof beyond a reasonable doubt for a conviction, such may also be sufficient to create a reasonable suspicion the offense of speeding has been or is being committed.
 {¶ 27} We agree with the trial court and find, under the totality of the circumstances, Officer Cox had a reasonable and articuable suspicion which warranted the stop of Appellant's vehicle. Accordingly, we find the trial court did not err in denying Appellant's motion to suppress.
 {¶ 28} Appellant's first assignment of error is overruled.
 II, III {¶ 29} Appellant's second and third assignments of error challenge the sufficiency and manifest weight of the evidence.
 {¶ 30} In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at *Page 11 
trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at syllabus 2.
 {¶ 31} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172,175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 32} Appellant notes the only drugs found on his person was a small baggy of marijuana. He explains the cocaine and larger amounts of marijuana were found in a backpack in the vehicle he was driving, but did not own. Appellant adds the backpack did not have any identifying information indicating such belonged to him. With respect to the trafficking charge, Appellant submits the evidence upon which the State contends he was involved in the sale or resale of cocaine and/or marijuana are all legal items to possess, i.e., a digital scale, magazine advertisements, sandwich bags, etc. *Page 12 
 {¶ 33} Appellant was convicted of two counts of trafficking in drugs, in violation of R.C. 2925.03(A)(2), which provides:
 {¶ 34} "(A) No person shall knowingly do any of the following:
 {¶ 35} "(1) Sell or offer to sell a controlled substance;
 {¶ 36} "(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person."
 {¶ 37} Officer Cox testified at trial, during the search of Appellant's person, he found a cellular phone and a baggy of marijuana. On the passenger side of the vehicle, the officer found a second cellular phone, a marijuana filled cigar, and a plastic container holding loose leaf tobacco. On the passenger seat, Officer Cox located a backpack containing toiletries in an outside compartment, and, in the inside main compartment, a Crown Royal bag containing a digital scale and plastic baggies. A second search of the backpack was conducted at the police station by Officer Valverde, who discovered an additional plastic bag which contained approximately 60 grams of marijuana, a golf ball size clump of cocaine, more plastic sandwich bags, and an Eggo waffle box filled with magazine paper. When Officer Cox presented the toiletries found in the backpack to Appellant, Appellant accepted these items, which indicates ownership of the backpack. The type of condom found in Appellant's pocket also matched the type of condoms found in the backpack. Thus, the jury could conclude Appellant also "owned" the cocaine and marijuana found in the backpack. *Page 13 
 {¶ 38} Appellant claims the items and drugs found in the car did not belong to him, noting the vehicle was owned by another individual. Officer Mark Leatherman, a detective with the Delaware County Drug Task Force, explained drug traffickers frequently do not utilize their own vehicles. Officer Leatherman further described the use of plastic sandwich bags, magazine papers, and digital scales in drug trafficking. These items are circumstantial evidence Appellant was using these items in such a manner. Finally, a silver cell phone was found in the backpack on the night of Appellant's arrest. Officer Cox retrieved a voice mail message which was directed to Appellant, leading to the conclusion the phone belonged to Appellant. The cell phone was found in the backpack on the passenger's seat of the vehicle.
 {¶ 39} We find, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime of trafficking of drugs proven beyond a reasonable doubt. We further find the jury's verdict was not against the manifest weight of the evidence.
 {¶ 40} Appellant's second and third assignments of error are overruled. *Page 14 
 {¶ 41} The judgment of the Delaware County Court of Common Pleas is affirmed.
 By: Hoffman, P.J., Farmer, J. and Edwards, J. concur. *Page 15 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Delaware County Court of Common Pleas is affirmed. Costs assessed to Appellant. *Page 1