DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Bradley Butler, appeals the decision of the Summit County Court of Common Pleas, which found him guilty of theft by deception. This Court affirms.
 I. {¶ 2} Butler was indicted by the Summit County Grand Jury on January 29, 2007, on one count of theft, a violation of R.C. 2913.02(A)(3). Specifically, Butler was charged with knowingly depriving Thomas Glassburner, one of the owners of Radiatorwerks, of property or services in the amount of $1, 186. Butler pled not guilty to the charge, and the case was scheduled for trial on May 3, 2007. *Page 2 
Butler was found guilty and sentenced to nine months of incarceration, suspended, upon the condition that he complete three years of community control and abide by sanctions imposed by the court, including paying $1, 186 and avoiding all contact with Thomas Glassburner. Butler timely appealed his conviction, setting forth four assignments of error for review.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN THE COURT OVERRULED [APPELLANT'S] [CRIM.R.] 29 MOTION TO DISMISS AT THE CONCLUSION OF THE STATE'S CASE IN CHIEF AS THE PROSECUTION FAILED TO OFFER SUFFICIENT EVIDENCE TO PROVE BEYOND A REASONABLE DOUBT EACH AND EVERY ELEMENT OF THE CHARGED OFFENSE OF THEFT BY DECEPTION."
 ASSIGNMENT OF ERROR II "THE ENTERING OF A GUILTY [VERDICT] BY THE JURY TO THE CHARGE OF THEFT BY DECEPTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 3} In his first and second assignments of error, Butler contends that the evidence presented by the prosecution was insufficient for the court to consider, and that his conviction is against the manifest weight of the evidence. This Court disagrees.
 {¶ 4} As a preliminary matter, we observe that sufficiency of the evidence and weight of the evidence are legally distinct issues.State v. Thompkins (1997), 78 Ohio St.3d 380, 386. Crim.R. 29(A) provides that a trial court "shall order the *Page 3 
entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id. "In essence, sufficiency is a test of adequacy." Thompkins, 78 Ohio St.3d at 386.
 {¶ 5} "While the test for sufficiency requires a determination of whether the [S]tate has met its burden of production at trial, a manifest weight challenge questions whether the [S]tate has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. CA19600, citing Thompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant asserts his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id. *Page 4 
 {¶ 6} Sufficiency of the evidence is required to take a case to the jury; therefore, a finding that a conviction is supported by the weight of the evidence necessarily includes a finding of sufficiency. State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462. "Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." Id.
 {¶ 7} Butler was convicted of theft by deception in violation of R.C.2913.02(A)(3), which provides: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [b]y deception[.]" Deception includes:
 "knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact." R.C. 2913.01(A).
"Deprive" means to "[a]ccept * * * services, with purpose not to give proper consideration in return for the * * * services, and without reasonable justification or excuse for not giving proper consideration." R.C. 2913.01(C)(3). An individual "acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).
 {¶ 8} At trial, the State presented the testimony of Mr. Thomas Glassburner. Mr. Glassburner testified that he is part owner of Radiatorwerks. *Page 5 
Mr. Glassburner stated that Butler dropped off a radiator on December 19, 2005. Mr. Glassburner testified that he had come to know Butler through his business dealings with Contractors Steel. Mr. Glassburner stated that Butler often brought parts in to Radiatorwerks for repair for Contractors Steel. Mr. Glassburner stated that on December 19, 2005, Butler stated that "we need this gone over." Mr. Glassburner said that he understood that to mean that Butler had brought the radiator in for Contractors Steel. Mr. Glassburner testified that he told Butler that he needed more time to go over the radiator and that Butler told him that he was out getting parts and that he would come back later.
 {¶ 9} Mr. Glassburner stated that he looked at the radiator, gave Butler a quote, and Butler told him "to go ahead and do it, we got to have it." Mr. Glassburner further testified that he told Butler the cost would be $1, 186 to repair the radiator and that the price never changed. In fact, Mr. Glassburner stated that if there was going to be a change in the price to repair the radiator, he would have contacted Contractors Steel for approval. Mr. Glassburner testified that Butler came in several times a day after that until the unit was ready.
 {¶ 10} On December 22, 2005, the radiator was ready for pick up and Mr. Glassburner testified that he told Butler it was ready when he stopped in that day. Mr. Glassburner stated that Butler took the radiator on December 22, 2005. Mr. Glassburner testified that before Butler left with the radiator, he asked Butler for a purchase order number. Mr. Glassburner stated that Butler got on his cell phone *Page 6 
and called someone, then told him that the computers were down and that he could not get a purchase order number. Mr. Glassburner stated that, later that day, Butler called back and told him that the computers were still down and to put "Verbal Kevin" on the invoice. Mr. Glassburner testified that in the past Contractors Steel had given verbal approval, so this did not alert him to a potential problem. Mr. Glassburner stated that he marked the invoice with a verbal purchase order number, "Verbal Kevin," and billed Contractors Steel for the work. Mr. Glassburner further averred that when Butler picked up the radiator he signed a job work order which listed Contractors Steel as the party being billed the amount of $1, 186.
 {¶ 11} Roger Plants, plant manager for Contractors Steel, also testified on behalf of the State at trial. Mr. Plants stated that he received an invoice from Radiatorwerks in January 2006. He testified that, upon receiving the invoice, he notified Radiatorwerks that this could not be his invoice because Contractors Steel did not have a vehicle in which this radiator would fit. Mr. Plants stated that Mr. Glassburner told him that Butler had brought in the radiator. Mr. Plants testified that he informed Mr. Glassburner that Butler had not worked for Contractors Steel for a few months.
 {¶ 12} Butler testified on his own behalf at trial. Butler stated that he took a radiator to Radiatorwerks on November 21, 2005. However, Butler admitted telling Officer Krejci, a patrolman for the City of Twinsburg, that he took the *Page 7 
radiator to Radiatorwerks sometime in December. In addition, Officer Michael Krejci and Washington Lacy, III, an investigator for the Summit County Prosecutor's Office, both testified that Butler initially told them that he had taken the radiator to Radiatorwerks sometime in December 2005 and that it was much later that Butler mentioned the November date.
 {¶ 13} Butler stated that several phone conversations then took place between him and Mr. Glassburner after he dropped off the radiator regarding what needed to be done and the cost for such repairs. Butler testified that he was told different prices, with the final cost of the repairs being $1, 186.00. Butler testified that someone from Radiatorwerks called him on December 2, 2005, and told him the radiator was ready to be picked up. Butler further testified that he only had $1, 000.00, but thought that due to his past relationship with Mr. Glassburner, they could work something out. Butler stated that when Mr. Glassburner would not let him have the radiator, he made arrangements to purchase one from a junk yard for $400.00. Butler testified that he purchased the radiator from the junk yard on December 5, 2005. Butler also stated that he also called Mr. Glassburner about a week before Christmas 2005 and again offered him $1, 000.00 for the radiator he dropped off.
 {¶ 14} In an attempt to establish an alibi, Butler testified that on December 22, 2005, the day Mr. Glassburner testified that he picked up the radiator, he could not have been at Radiatorwerks because he was "on the road." To support this *Page 8 
assertion, Butler admitted a page from his trucking log book and a bill of lading into evidence. Although Butler stated that he was required to maintain an accurate log book, on cross-examination, he stated that the maintenance of the log book was done on the honor system. Butler also admitted that he had violated the law in the past by carrying loads in excess of the amount allowed.
 {¶ 15} After reviewing the record in its entirety, this Court cannot conclude that Butler's conviction of theft by deception was against the manifest weight of the evidence. Butler's failure to tell Mr. Glassburner that the radiator he brought in for repair was his personal radiator rather than one belonging to Contractors Steel gave Mr. Glassburner the impression that the radiator belonged to Contractors Steel. After learning that Mr. Glassburner believed that the work he was performing was for Contractors Steel, Butler failed to tell him that the radiator was for his personal vehicle. In addition, Butler signed a job work order which listed Contractors Steel as the party to be billed. Given the previous course of business dealings between Mr. Glassburner and Butler when Butler was employed by Contractors Steel, the jury could, therefore, have found that Mr. Glassburner had no reason to believe that the radiator that Butler brought in for repairs did not belong to Contractors Steel. Further, given that Butler did not tell Mr. Glassburner that he was no longer employed at Contractors Steel or that the radiator was for his personal vehicle, the jury could have found that Butler took the radiator into Radiatorwerks to have it repaired with no intention of paying for the repairs. *Page 9 
 {¶ 16} Although conflicting testimony was presented, this Court refuses to overturn the verdict because the jury chose to believe the testimony of the State's witnesses. "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony." State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757. Accordingly, having found that Butler's conviction was not against the manifest weight of the evidence, this Court need not discuss further his challenge to the sufficiency of the evidence. Butler's first and second assignments of error are overruled.
 ASSIGNMENT OF ERROR III "APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL TO HIS PREJUDICE[.]"
 {¶ 17} In his third assignment of error, Butler asserts that his trial counsel was ineffective. Butler states that counsel's errors, which included failure to file a notice of alibi, failure to adequately investigate and present his alibi defense, failure to request a jury instruction on alibi, failure to adequately cross-examine the State's witnesses, and failure to file pretrial motions challenging the admissibility of statements given to law enforcement officers without the benefit of Miranda warnings. Butler's assertions lack merit.
 {¶ 18} In order to establish the existence of ineffective assistance of counsel, the defendant must satisfy a two-pronged test: *Page 10 
 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." State v. Colon, 9th Dist. No. 20949, 2002-Ohio-3985, at ¶ 48, quoting Strickland v. Washington (1984), 466 U.S. 668, 687.
 {¶ 19} Butler bears the burden of proof on this matter. Colon
at ¶ 49, citing State v. Smith (1985), 17 Ohio St.3d 98, 100. Furthermore, there exists a strong presumption of the adequacy of counsel's performance, and that counsel's actions were sound trial tactics.Colon at ¶ 49, citing Smith, 17 Ohio St.3d at 100. "A strong presumption exists that licensed attorneys are competent and that the challenged action is the product of a sound strategy." State v. Watson (July 30, 1997), 9th Dist. No. 18215. Additionally, debatable trial tactics do not give rise to a claim for ineffective assistance of counsel. In Re:Simon (June 13, 2001), 9th Dist. No. 00CA0072, citing State v.Clayton (1980), 62 Ohio St.2d 45, 49, 402. A defendant should put forth a showing of a substantial violation of an essential duty.Watson, supra.
{120} Prejudice entails a reasonable probability that, but for counsel's errors, the result of the trial would have been different.State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. The court is also to consider "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Colon at ¶ 49, quoting Strickland, *Page 11 466 U.S. at 690. An appellate court may analyze the second prong of theStrickland test alone if such analysis will dispose of a claim of ineffective assistance of counsel on the ground that the defendant did not suffer sufficient prejudice. See State v. Loza (1994),71 Ohio St.3d 61, 83.
 {¶ 21} This Court shall address each of Butler's arguments separately. First, we do not believe that defense counsel's decisions regarding Butler's alibi defense constitute ineffective assistance of counsel. The decision of whether to file a notice of alibi pursuant to Crim.R. 12.1 is a trial tactic and does not constitute ineffective assistance of counsel. State v. Smith (1985), 17 Ohio St.3d 98, 100-101. Furthermore, trial counsel may also properly make the strategic decision not to request a jury instruction on alibi. State v. McWhorter, 8th Dist. No. 87443, 2006-Ohio-5438, at ¶ 22.
 {¶ 22} Butler also argues that his trial counsel failed to sufficiently cross-examine the State's witnesses. "The extent and scope of cross-examination clearly fall within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel." State v. Leonard, 104 Ohio St.3d 54, 2004-Ohio-6235, at ¶ 146. As such, Butler's reliance on this argument is misplaced. Furthermore, Butler ignores the record when making this argument. Butler's trial counsel extensively cross-examined each of the State's witnesses. Accordingly, Butler has failed to demonstrate that his trial counsel erred. *Page 12 
 {¶ 23} Upon a review of the record, we conclude that Butler failed to show a substantial violation of an essential duty on the part of defense counsel. The calling of witnesses is a trial tactic, and as stated earlier, absent a showing of a substantial violation of an essential duty, debatable trial tactics of defense counsel generally are not sufficient to give rise to a claim for ineffective assistance of counsel. State v. Coleman (Nov. 4, 1992), 9th Dist. No. 15612. Furthermore, counsel functioned effectively at the hearing inasmuch as he actively participated by cross-examining the State's witnesses. SeeState v. Paxton (Jan. 16, 2002), 9th Dist. No. 01CA007818 (finding effective assistance of counsel where defense attorney thoroughly cross-examined State's witnesses and defendant failed to show prejudice).
 {¶ 24} Finally, Butler argues that his trial counsel's failure to file a motion to suppress statements he made to law enforcement officers without the benefit of Miranda warnings constituted ineffective assistance of counsel. This Court finds this argument to be without merit.
 {¶ 25} "The failure to file a motion to suppress is not per se ineffective assistance of counsel. Failure to file a motion to suppress constitutes ineffective assistance of counsel only if, based on the record, the motion would have been granted." (Internal citations omitted.) State v. Kuhn, 9th Dist. No. 05CA008859, 2006-Ohio-4416, at ¶ 11. *Page 13 
 {¶ 26} Pursuant to Miranda v. Arizona (1966), 384 U.S. 436, 471-72, once police begin a custodial interrogation, they must use procedures to warn the person in custody of his rights (i.e., "Miranda warnings"). The duty to provide Miranda warnings is only invoked when both custody and interrogation coincide. State v. Wiles (1991), 59 Ohio St.3d 71, 83, certiorari denied (1992), 506 U.S. 832. "Custody" for purposes of entitlement to Miranda rights exists only where there is a "`restraint on freedom of movement' of the degree associated with a formal arrest."California v. Beheler (1983), 463 U.S. 1121, 1125, quoting Oregon v.Mathiason (1977), 429 U.S. 492, 495. "Interrogation" is defined as "`any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" State v. Knuckles (1992), 65 Ohio St.3d 494, 496, quotingRhode Island v. Innis (1980), 446 U.S. 291, 301.
 {¶ 27} "Whether a suspect is in custody depends on the facts and circumstances of each case." State v. Dunn, 9th Dist. No. 04CA008549,2005-Ohio-1270, at ¶ 24, citing State v. Warrell (1987),41 Ohio App.3d 286, 287. The test is "whether, under the totality of the circumstances, a reasonable person would have believed that he was not free to leave."Dunn, at ¶ 24, quoting State v. Gumm (1995), 73 Ohio St.3d 413, 429, certiorari denied (1996), 516 U.S. 1177, quoting United States v.Mendenhall (1980), 446 U.S. 544, 554. *Page 14 
 {¶ 28} In the present case, Butler doesn't specify which statements his trial counsel should have moved to suppress. However, there is nothing in the record to indicate that he was subject to a custodial interrogation. Butler went to the police station willingly to speak with Officer Krejci. He also met with the Assistant Prosecutor and Investigator Lacy voluntarily. At no time during his testimony did Butler suggest that he was compelled to answer any questions from any of the police officers he spoke with or that his freedom of movement was restrained in any manner. This Court concludes that the circumstances of this case are such that Butler was neither in custody nor under interrogation, and therefore Miranda warnings were not required. Accordingly, Butler's trial counsel was not ineffective for failing to file a motion to suppress Butler's statements on the grounds that the State did not comply with Miranda.
 {¶ 29} As this Court finds that Butler failed to prove that his trial counsel's performance was deficient, we do not reach the second prong of the Strickland test. Thus, Butler's ineffective assistance of counsel claim must fail. Colon at ¶ 48, citing Strickland, 466 U.S. at 687. Butler's third assignment of error is overruled.
 ASSIGNMENT OF ERROR IV "THE CONDUCT AND DEMEANOR TO (sic) THE TRIAL JUDGE WAS PREJUDICIAL TO THE APPELLANT AND AS SUCH APPELLANT WAS DENIED A FAIR TRIAL[.]" *Page 15 
 {¶ 30} In his fourth assignment of error, Butler argues that the demeanor and conduct of the trial judge during the course of his testimony prejudiced the jury against him and denied him a fair trial. This Court disagrees.
 {¶ 31} In support of his argument, Butler points to two portions of his transcript in which the trial judge addresses his client regarding his behavior on the witness stand. However, Butler failed to object to the trial judge's comments during the trial, thereby forfeiting his right to assert this argument on appeal. See State v. Payne,114 Ohio St.3d 502, 2007-Ohio-4642, at ¶ 23. Furthermore, Butler has failed to argue plain error on appeal. Therefore this Court will not engage in a plain error analysis. Butler's fourth assignment of error is overruled.
 III. {¶ 32} Butler's four assignments of error are overruled. The decision of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27. *Page 16 
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
DICKINSON, J. BAIRD, J. CONCUR.
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.) *Page 1