DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Starlyn Smallwood, appeals from the decision of the Wayne County Court of Common Pleas. This Court affirms in part, reverses in part and remands for proceedings consistent with this opinion.
 I. {¶ 2} On January 23, 2007, Medway Drug Enforcement Agency and the City of Rittman police SWAT team executed a no-knock search warrant for 43 South Third Street in Rittman, Ohio ("the home"). Smallwood was renting the home at the time of the search. Earlier in the day, a confidential informant conducted a probable cause buy of marijuana from the home. *Page 2 
 {¶ 3} Upon entry into the home, the officers located four adult males, one adult female, and one child. The child was Smallwood's son. Smallwood was not present at the time of the search. Smallwood returned home near the end of the search. The search revealed a handgun, marijuana, baggies and a digital scale. Seventeen small bags of marijuana were found in Smallwood's bedroom, along with $90 in currency. The handgun was found in a room occupied by Smallwood's roommates. The digital scale was found in the kitchen. Smallwood's boyfriend, Rayshaun Hastings ("Hastings"), admitted that one bag of marijuana found in Smallwood's bedroom was his.
 {¶ 4} On February 12, 2007, Smallwood was indicted on one count of trafficking in marijuana, in violation of R.C. 2925.03(A)(2). The indictment also contained a forfeiture specification alleging that the $90 located in Smallwood's bedroom was subject to forfeiture. Smallwood pled not guilty to the charge and a jury trial was held on June 27, 2007. The jury found Smallwood guilty of trafficking in marijuana and further found that the offense occurred in the vicinity of a juvenile. Smallwood was sentenced to 18 months of incarceration and the $90 was ordered forfeited. Smallwood appeals from her conviction and sentence, raising five assignments of error for our review. We have combined two of Smallwood's assignments of error for ease of review.
 II. ASSIGNMENT OF ERROR I *Page 3 "THE TRIAL COURT ERRED BY OVERRULING SMALL WOODS' MOTION FOR ACQUITTAL UNDER CRIM.R. 29(C)."
 ASSIGNMENT OF ERROR II "THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 5} In her first and second assignments of error, Smallwood contends that her conviction for trafficking in drugs was against the manifest weight of the evidence and was based on insufficient evidence. We do not agree.
 {¶ 6} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390. Further,
 "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
 {¶ 7} Therefore, we will address Smallwood's claim that her conviction was against the manifest weight of the evidence first, as it is dispositive of her claim of insufficiency.
 {¶ 8} When a defendant asserts that her conviction is against the manifest weight of the evidence, *Page 4 
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 9} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 10} In the instant case, Smallwood was convicted of trafficking in drugs, in violation of R.C. 2925.03(A)(2). This sections states that
 "[n]o person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person."
 {¶ 11} Accordingly, "the State had to prove that [Smallwood] 1) knowingly, 2) prepared for distribution, 3) a controlled substance, 4) knowing that the controlled substance was intended for sale or resale by the offender or another person." State v. Smith, 3d Dist. No. 14-01-28, 2002-Ohio-5051, at ¶ 18, citing R.C. 2925.03. Further, the State had to prove that the trafficking occurred within the vicinity of a juvenile. Id.; R.C. 2925.03(C)(2)(b).
 {¶ 12} "Knowingly" is one of the culpable mental states defined in R.C.2901.22(B):
 "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will *Page 5 
probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 13} Smallwood argues that the State failed to show any direct evidence that she knowingly prepared marijuana for sale or that the crime was committed in the vicinity of a minor. However, "[circumstantial evidence and direct evidence inherently possess the same probative value[.]" State v. Jenks (1991), 61 Ohio St.3d 259, paragraph one of the syllabus. "Circumstantial evidence, furthermore, permits legitimate inferences." Waterville v. Lombardo, 6th Dist. No L-02-1160 2004-Ohio-475, at ¶ 18.
 {¶ 14} City of Rittman police officer Robert Shows ("Officer Shows") testified that he participated in the search of the home. He testified that Smallwood lived at the home and that he has known Smallwood throughout his career. Officer Shows testified that during the search he was part of the entry team. Upon entry, the officers found four males, one female and a small child. Officer Shows explained a diagram he had made of the home. He stated that the home had three bedrooms, a bathroom, a kitchen, a living room and a basement. Officer Shows testified that the front entrance to the home was blocked from the inside with a couch and that the side entrance was being used. He further testified that a closed circuit TV camera was mounted outside the side entrance so that one could theoretically see from inside who was at the door. Officer Shows stated that he spent much of the night with the three-year-old child. He explained that *Page 6 
Smallwood was not at the home when the officers entered, but came home at the end of the search. He then identified Smallwood in court. Officer Shows further testified that his office had been getting reports of high volumes of traffic to and from the home. According to Officer Shows, this "means it's a place we want to watch, something's going on there. Especially when the traffic's coming and going at all hours of the day." On cross-examination, Officer Shows explained that the home was actually a duplex and there was another tenant living on the second floor. He further stated that in the past he had been called to the second floor apartment due to loud noise.
 {¶ 15} The State next called Medway Drug Enforcement Agency Agent Charles Ellis ("Agent Ellis"). Agent Ellis stated that in his ten years of employment with Medway he had become familiar with common terminology and weights in which drugs are sold. He explained that smaller amounts of marijuana were normally packaged in a "common sandwich baggy" for sale. Agent Ellis testified that he was involved in the search of the home on January 23, 2007. He testified that according to the search warrant, officers were authorized to search for marijuana or any controlled substance, contraband, drug devices, instruments or drug paraphernalia. He testified that it is common for people who sell drugs to also have weapons "for their protection to guard their drugs." Agent Ellis explained the use of a confidential informant and a probable cause buy. According to Agent Ellis, *Page 7 
 "[t]he probable cause buy is when we have a confidential informant that says that they can purchase drugs out of a residence but they cannot take anybody in with them usually. So what we do is we have the confidential informant. We'll search their person. Make sure they have no money or drugs on them. At which time we'll supply them with an audio transmitting device which is a wire which can be transmitted out. Then we can hear it from a different location. At that point they are supplied X amount of number of dollars for whatever controlled purchase or controlled substance we are purchasing. At that point we keep visual and audio surveillance on that confidential informant. They go in the residence, purchase the drugs which we can hear. And then they come out, immediately meet with us, turn that controlled substance over to us. Once again we search their person to make sure they kept no drugs or they had no other money on them. And then sometimes we get a written statement from them depending on the situation."
 {¶ 16} After a probable cause buy, the officers would get a search warrant for that location. Agent Ellis confirmed that there was a probable cause buy at Smallwood's home on January 23, 2007. He further explained that there was a "no knock" search warrant for the home, meaning that the officers did not have to knock before entering the home. Agent Ellis testified that the search had been videotaped. The video was played for the jury and showed the five adults and the child that were present during the search. Agent Ellis testified that the child in the video was identified as Smallwood's son. He explained that after the video was taken, the officers began searching the residence. According to Agent Ellis, the officers found a box in Smallwood's bedroom that contained 17 small baggies of marijuana and $90. Also in Smallwood's bedroom, officers located a small bag of marijuana on a nightstand, another on top of a basket, and more marijuana located in a glass. Agent Ellis testified that a digital scale was located on the kitchen *Page 8 
table. According to Agent Ellis, a digital scale, along with the other items, indicates that drug trafficking occurred. He explained that this is "[b]ecause you need to weigh up the drugs to get it even. So when you sell it you know how much you're selling to ask how much money to get for the drugs." Along with the scale, officers found one box of fold top sandwich baggies. "This along with the scales, due to my training and experience, I can say there's trafficking occurring. Because they usually use the bags, weigh out the drugs on the scale, package it for sale in the baggies."
 {¶ 17} Agent Ellis further testified that a shot gun was located in another bedroom in the house. The State questioned Agent Ellis as to the significance of "locating 17 bags of suspected marijuana in one area[.]" Officer Ellis explained that, to him, it meant "[t]hat drugs were being sold out of that residence. Especially when you find the baggies that were used to package it, the scale to weigh it up. And every one of those bags weighed approximately the same. So when they're weighing the same, they're being sold in that increment. Especially when you have 17 of them." Agent Ellis further stated that he interviewed two of the adults present, Amber Zahm ("Zahm") and Rayshaun Hastings ("Hastings"), who confirmed that Smallwood and Hastings shared the bedroom containing most of the marijuana. We further note that on the video showed to the jury, Hastings said that he lived in the home. On cross-examination, Agent Ellis reiterated that marijuana is typically sold in small baggies. When asked if that was "also typical *Page 9 
of how marijuana is packaged to buy," he agreed. He agreed that marijuana was typically sold and bought in baggies. Agent Ellis explained that the baggies that officers found in Smallwood's bedroom were "packaged the same as during the probable cause buy that we had made previously that night. It was packaged the same way, the marijuana we bought out of the house for the probable cause for the search warrant." Agent Ellis confirmed that the marijuana was found in a room shared by two people. Smallwood's counsel synthesized Agent Ellis' testimony as follows: "You found packages of marijuana. But you can not testify who prepared those packages can you?" Ellis answered that he could not identify who prepared the packages but that they were the same as the marijuana purchased during the controlled buy. Agent Ellis further testified that he could not deny that the marijuana could have been brought into the house packaged like that. According to Agent Ellis, Hastings confirmed that a bag of marijuana located in Smallwood's bedroom was his, but he denied knowing about the 17 baggies located in the box in the bedroom. Agent Ellis testified that the probable cause buy would have taken place after 2:15 p.m.
 {¶ 18} The State next called Medway Agent Dustin Burnett ("Agent Burnett"). Agent Burnett testified that he was involved in the search of the home on January 23, 2007. Agent Burnett explained that he prepared the affidavit for the search warrant of the home. Agent Burnett further explained that the affidavit indicated that a probable cause buy occurred at the home. He testified that *Page 10 
marijuana was purchased from Smallwood's home on January 23, 2007. Agent Burnett also testified to the inventory sheet that he prepared from the search of the home. This inventory list was admitted as evidence. The inventory list indicates that officers located "numerous pieces of clear plastic bags that have been cut/ripped" on the kitchen table top along with the scale. Further, the inventory shows that $510 was discovered in the left front pocket of one of the residents of the home.
 {¶ 19} Agent Burnett stated that he had tested the substance found in the home and that it tested positive for marijuana. He testified that he weighed the 17 baggies of marijuana found in Smallwood's bedroom and they each weighed between .7 grams and 1.1 grams. Agent Burnett stated that "the weights are consistent with being packaged for sale for trafficking. Since they all weigh pretty much the same weight, that's commonly known through my experience and training that they were packaged for sale to be sold." Agent Burnett identified Smallwood in court. According to Agent Burnett, while he was at the home, Smallwood acknowledged that it was her home and that her bedroom was the one in which officers located the marijuana. Agent Burnett testified that the box in which he found the 17 baggies of marijuana had a clasp with a small gold padlock on it, but was not locked. On cross-examination, Agent Burnett explained that during a probable cause buy, the confidential informant is given money that has been memorialized so that it could be identified later. He further explained that *Page 11 
the money from the probable cause buy was not found in the home. At the conclusion of Agent Burnett's testimony, the State rested its case.
 {¶ 20} Smallwood testified on her own behalf. She testified that she has a small child. She verified that he was the child in the video played for the jury. She stated that she signed the lease on the home in July of 2005. She was evicted in February of 2007. Smallwood testified that on January 23, 2007, she left for work at approximately 2:15 p.m. She further testified that four of the adults shown on the video and her son were present when she left the home for work. She explained that Hastings was not at the home when she left. She further explained that Hastings was her boyfriend and that he lived between her home and Canton, where his children lived. According to Smallwood, Hastings called her at 4:00 p.m. to tell her that he had arrived at the home. Smallwood denied having ever seen a scale in her kitchen. She testified that when she left for work, she left approximately $60 in the box in her room. Smallwood further testified that she left this money for Zahm so she could buy anything that she may have needed for Smallwood's child. She stated that the box was not locked and that everyone in the home had access to it. According to Smallwood, Hastings used "[a] lot" of marijuana. Because of this, Smallwood explained, she had seen baggies of marijuana in the box before. Smallwood further testified that Zahm also used marijuana. Smallwood stated that when she arrived home from work, she was surprised to see the police in her driveway. She testified that she had previously *Page 12 
been charged with disorderly conduct and assault. Smallwood explained that her home was a duplex and that she did not get along well with her neighbor. She testified that on several occasions she had called the police on him. Smallwood stated that she was surprised to learn that the officers found a gun in the home.
 {¶ 21} On cross-examination, Smallwood testified that Hastings did not live with her full time. She explained that two of the men on the video were visiting from Chicago. Smallwood testified that it was possible that there was marijuana in the house when she left for work because Zahm and her boyfriend did marijuana. According to Smallwood, however, there were no drugs in her bedroom when she left for work. Smallwood testified that she had had the box in her room for several years and that Hastings sometimes kept money in it. She further testified that "[everybody had the right to go in and out of my room." Smallwood explained that none of the other adults were on the lease and that they moved in after she had lived there for a while. She stated that Zahm moved in because she (Smallwood) needed someone to watch her child while she went to work. Smallwood testified that she normally worked from 3:00 p.m. to 11:30 p.m. She testified that because she had been previously assaulted, she mounted a closed circuit television to the door of the home. She explained that the display to the camera was on the kitchen table. Smallwood denied ever having seen the scale that was found in her kitchen. Smallwood admitted that she occasionally used marijuana and that she had seen marijuana in her box a "couple times[,]" but *Page 13 
stated that she did not purchase it. She explained that Hastings would keep about five baggies of marijuana. According to Smallwood, "he always had a lot." When asked about the high volume of traffic going in and out of her home, Smallwood explained that many of the complaints had to do with her upstairs neighbor. She further explained that she had a music studio in her basement and a lot of people came over to use it.
 {¶ 22} On redirect examination, Smallwood testified that she had been assaulted by an ex-boyfriend and that she had filed a police report. She explained that the front door was not secure so she put a couch in front of it. She further explained that she had asked her landlord to fix the locks, but that he never replaced them. As such, Smallwood replaced the side door and put up the closed circuit camera for protection. She explained that it was on at night because she "was scared for long time after it happened." On recross examination, Smallwood further explained that her brother and his girlfriend and her younger brother came over to her home several times a day.
 {¶ 23} We cannot say that the jury lost its way when it relied upon the circumstantial evidence produced by the State. The evidence showed that officers found 17 baggies of marijuana in Smallwood's bedroom, and a digital scale and baggies in her kitchen. The State's witnesses testified that these materials, along with the fact that each baggie contained an almost equal amount of marijuana, indicated drug trafficking. See State v. Kutsar, 8th Dist. No. 89310, 2007-Ohio- *Page 14 
6990, at ¶ 20, citing State v. Fain, 5th Dist. No. 06CAA120094,2007-Ohio-4854, at ¶ 37-38, Smith, supra at ¶ 19, State v. Fry, 9th Dist. No. 23211, 2007-Ohio-3240, at ¶ 39. The officers also testified that the baggies of marijuana found in Smallwood's bedroom were very similar to the baggy of marijuana purchased during the controlled drug buy conducted earlier that day. The officers testified that the search was a no-knock search, meaning that the occupants were unaware of the impending police entry. This contradicts Smallwood's implied argument that the occupants could have quickly placed the marijuana in her room upon hearing the police enter the home.
 {¶ 24} Further, we find that the evidence showed that Smallwood's three-year-old child resided in the home. In Smith, supra, officers conducted a search on the appellant's home. At the time of the search there were two adults and two juveniles present. The appellant was not there. The appellant was indicted and convicted of trafficking in marijuana in the vicinity of a minor. On appeal, the third district noted that one of the juveniles testified at the trial that she was at the home when the search warrant was executed and that she had never purchased or received any marijuana from the appellant. Smith, supra, at ¶ 3. The third district further noted that the juvenile never testified that she was present in the home at any other time. The third district found that although the State had shown that there were two juveniles present at the time of the search, it did not show that the appellant had committed a crime at that time. As the court noted, the appellant *Page 15 
was not present at the time of the search. "Evidence that a juvenile was present during execution of a search warrant is not evidence that a juvenile was in the vicinity during the commission of any offense unless the offense was being committed at the same time that the search warrant was executed." Smith, supra, at ¶ 18. Unlike Smith, the evidence in the instant case showed that the child lived in the home and was more than a mere visitor. See State v. Flores, 6th Dist. Nos. WD-04-012, WD-04-050,2005-Ohio-3355.
 {¶ 25} In Flores, officers searched a home in which the appellant was present. Officers also noticed three small children entering a vehicle in the driveway. The appellant was indicted and convicted for trafficking in marijuana in the vicinity of a minor. On appeal, the sixth district upheld the conviction, finding that, in contrast toSmith, there was evidence that the children resided in the home. Officers testified that during the search they noticed children's items throughout the residence, including some items near drug paraphernalia. Further, officers testified that they had learned through Children's Services that minor children lived in the home. As such, the court found that the conviction was proven beyond a reasonable doubt.
 {¶ 26} Although Smallwood was not present at the time of the search, the testimony at trial indicated that she had been there earlier in the day. On the videotape showed to the jury, Zahm explained that she lived with Smallwood in order to take care of Smallwood's small child while she went to work. Smallwood *Page 16 
confirmed this fact. The indication is that the child resided in the home. The videotape also shown that the third bedroom of the house contained several toys, again indicating that it was a child's bedroom. As such, we find that "a rational trier of fact could have found the specification of commission of the crime in the vicinity of a juvenile proven beyond a reasonable doubt." Id. at ¶ 46.
 {¶ 27} Ample evidence was presented that would permit the jury to find that Smallwood knowingly trafficked in marijuana in the vicinity of her small child. Accordingly, after a review of the record, this Court cannot conclude that the trial court created a manifest miscarriage of justice. As this Court has disposed of Smallwood's challenge to the weight of the evidence, we similarly dispose of her challenge to its sufficiency on these claims. Roberts, supra, at *5. Smallwood's first and second assignments of error are overruled.
 ASSIGNMENT OF ERROR III "THE COURT ERRED TO THE PREJUDICE OF [SMALLWOOD] BY INSTRUCTING THE JURY IN A WAY THAT FAVORED THE STATE, OR BY EXHIBITING AN UNINTENTIONAL APPEARANCE OF BIAS IN THE STATE'S FAVOR DURING ANSWERS TO JURY QUESTIONS ON THEIR INSTRUCTIONS."
 {¶ 28} In her third assignment of error, Smallwood contends that the trial court erred to her prejudice by instructing the jury in a way that favored the State, or by exhibiting an unintentional appearance of bias in the State's favor during answers to the jury questions on their instructions. We decline to address this issue. *Page 17 
 {¶ 29} In support of her argument, Smallwood points to two jury questions and the trial judge's responses to these questions. However, Smallwood failed to object to the trial judge's responses, thereby forfeiting her right to assert this argument on appeal. State v.Butler, 9th Dist. No. 23786, 2008-Ohio-781, at ¶ 31, citing State v.Payne, 114 Ohio St.3d 502, 2007-Ohio-4642, at ¶ 23. Further, Smallwood has failed to argue plain error on appeal. Butler, supra, at ¶ 31. See, also, In re L.A.B., 9th Dist. No. 23309, 2007-Ohio-1479, at ¶ 19
(declining to address plain error because the appellant had neither argued it nor explained why we should examine the issue for the first time on appeal). Therefore this Court will not engage in a plain error analysis. Smallwood's third assignment of error is overruled.
 ASSIGNMENT OF ERROR IV "THE SENTENCE WAS CONTRARY TO LAW AND THE COURT COMMITTED PLAIN ERROR BY NOT PERSONALLY INFORMING SMALLWOOD OF ADMINISTRATIVE EXTENSIONS OF HER PRISON TERM, AS REQUIRED BY R.C.2929.19(B)(3) [SIC]."
 {¶ 30} In her fourth assignment of error, Smallwood contends that the sentence was contrary to law and the court committed plain error by not personally informing her of administrative extensions of her prison terms, as required by R.C. 2929.19(B)(3). We agree.
 Smallwood was convicted of trafficking in marijuana, a fourth degree felony. R.C. 2929.19(B)(3) states in pertinent part that: *Page 18 
 "Subject to division (B)(4) of this section, if the sentencing court determines at the sentencing hearing that a prison term is necessary or required, the court shall do all of the following:
 "* * *
 "(d) Notify the offender that the offender may be supervised under section 2967.28 of the Revised Code after the offender leaves prison if the offender is being sentenced for a felony of the third, fourth, or fifth degree that is not subject to division (B)(3)(c) of this section. Section 2929.191 of the Revised Code applies if, prior to July 11, 2006, a court imposed a sentence including a prison term of a type described in division (B)(3)(d) of this section and failed to notify the offender pursuant to division (B)(3)(d) of this section regarding post-release control or to include in the judgment of conviction entered on the journal or in the sentence a statement regarding post-release control." (Emphasis added.)
 {¶ 31} Smallwood specifically argues that this section required noticeat the sentencing hearing regarding post-release control. The State concedes and our independent review reveals that Smallwood was not verbally informed of the possibility of post-release control at the sentencing hearing. The State further conceded at oral argument that this matter should be remanded for resentencing. We agree.
 {¶ 32} The Ohio Supreme Court has explained that a trial court "is required to notify the offender at the sentencing hearing about postrelease control and is further required to incorporate that notice into its journal entry imposing sentence." State v. Jordan,104 Ohio St.3d 21, 2004-Ohio-6085, at paragraph one of the syllabus. See, also,State v. Simpkins, Slip Opinion No. 2008-Ohio-1197, at syllabus. The Court further held that "[w]hen a trial court fails to notify an *Page 19 
offender about postrelease control at the sentencing hearing but incorporates that notice into its journal entry imposing sentence, it fails to comply with the mandatory provisions of R.C. 2929.19(B)(3)(c) and (d), and, therefore, the sentence must be vacated and the matter remanded to the trial court for resentencing." Jordan, supra, at paragraph two of the syllabus. As such, we must remand to the trial court for resentencing. Upon resentencing, the trial court cannot simply advise Smallwood of post-release control and "automatically reimpose the original sentence. Rather, the effect of vacating the trial court's original sentence is to place the parties in the same place as if there had been no sentence." State v. Bezak, 114 Ohio St.3d 94,2007-Ohio-3250, at ¶ 13.
 {¶ 33} Smallwood is "entitled to a de novo sentencing hearing pursuant to Jordan." Bezak, supra, at ¶ 6, citing Jordan, supra. Accordingly, Smallwood's fourth assignment of error is sustained and the cause remanded for proceedings consistent with this opinion.
 ASSIGNMENT OF ERROR V "THE TRIAL COURT ERRED IN VIOLATION OF U.S. CONST. AMEND. VI, XIV, AND R.C.2925.42 [SIC], BY ORDERING THE FORFEITURE OF NINETY DOLLARS SEIZED FROM SMALLWOOD'S HOME, AS BEING PROCEEDS OF A DRUG RELATED OFFENSE."
 {¶ 34} In her fifth assignment of error, Smallwood contends that the trial court erred in violation of the sixth and fourteenth amendments to the *Page 20 
U.S. Constitution and R.C. 2925.42 by ordering the forfeiture of $90 seized from the home, as being proceeds of a drug related offense.
 {¶ 35} Specifically, Smallwood argues that the trial court erred by not conducting a hearing in compliance with R.C. 2925.42 before ordering the forfeiture of the $90 found in her home. The State concedes that no hearing was held on this issue.
 {¶ 36} In its sentencing entry, the trial court ordered that the $90.00 in cash be forfeited to the State. The sentencing entry also indicates that the trial court used the version of R.C. 2925.42 that was in effect until July 1, 2007. This statute stated:
 "If a person is convicted of or pleads guilty to a felony drug abuse offense, * * * then a special proceeding shall be conducted in accordance with this division to determine whether any property described in division (B)(1)(a) or (b) of this section will be the subject of an order of forfeiture under this section." R.C. 2925.42(B)(3)(a).
 {¶ 37} The statute further explains that the jury, or the judge in a non-jury action, shall consider testimony and evidence to determine if the property in question is subject to forfeiture. Id. At this hearing, the State must prove by a preponderance of the evidence that the property is subject to forfeiture. Id.
 {¶ 38} We find no record of a special proceeding held in this case. The State concedes that no such proceeding was held. As such, we reverse and remand to the trial court for a forfeiture hearing. Accordingly, Smallwood's fifth assignment of error is sustained. *Page 21 
 III. {¶ 39} Smallwood's first, second, and third assignments of error are overruled. Her fourth and fifth assignments of error are sustained. The judgment of the Wayne County Court is affirmed in part and reversed in part. The cause is remanded for proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
 Costs taxed equally to both parties. *Page 22 
 SLABY, J., CARR, P. J. CONCUR *Page 1