The STATE of Ohio, Appellant,

v.

ERVIN, Appellee.

[Cite as *State v. Ervin* (1994), 93 Ohio App.3d 178.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 64252.

Decided Feb. 14, 1994.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Thomas A. Rein* Assistant County Prosecuting Attorney, for appellant.

*Donald Butler,* for appellee.

---

PATTON, Presiding Judge.

The state of Ohio (the "state") appeals from the trial court's sentencing order placing defendant-appellee on probation after the jury returned a guilty verdict for one count of aggravated robbery (R.C. 2911.01) and a not guilty verdict on the accompanying firearm specification. The state contends that the appellee is ineligible for probation pursuant to R.C. 2951.02(F)(3) despite the jury's not guilty verdict on the firearm specification. We agree with the state's assertion.

The following assignment of error is presented for our review:

"The trial court erred by placing a defendant on probation where he was found guilty of aggravated robbery but not guilty of the firearm specification, where there was evidence that a firearm was used in the crime and the term firearm was in the body of the indictment. (T. Vol. 2)."

This court, in *State v. Pope* (Sept. 2, 1993), Cuyahoga App. No. 63606, unreported, 1993 WL 335442, was faced with this very issue and held that a criminal defendant armed with a firearm or dangerous ordnance, when an offense other than carrying a concealed weapon is committed, is conclusively ineligible for probation pursuant to R.C. 2951.02(F)(3), notwithstanding the absence of an express R.C. 2941.141 firearm specification.

Probation is precluded by R.C. 2951.02, which provides in part as follows:

"(F) An offender shall not be placed on probation * * * when any of the following applies:

" * * *

"(3) The offense * * * was committed while the offender was *armed* with a firearm or dangerous ordnance, as defined in section 2923.11 of the Revised Code." (Emphasis added.)

The above statute does not refer to a firearm actually being "used" during the commission of an offense; rather, the prohibition refers to the fact that the offender was "armed" at the time of the commission of the offense. *State v. Theiss* (1988), 48 Ohio App.3d 251, 253, 549 N.E.2d 201, 202–203; *State v. Pope, supra,* at 8–9.

In contrast, R.C. 2941.141 is a penalty enhancement statute and provides, *inter alia,* for the imposition of a term of actual incarceration upon an

offender for having a firearm on or about his person or under his control during the commission of a felony so long as the indictment contains the applicable specification. As such, it is clear that R.C. 2941.141 provides for the imposition of a mandatory term of incarceration as a penalty enhancement to the actual sentence imposed for the commission of the crime as set forth in the indictment. *State v. Pope, supra,* at 9. R.C. 2941.141 calls for actual incarceration while R.C. 2951.02 does not. Ergo, a jury's failure to affirmatively find on a firearm specification merely precludes the imposition of the mandatory actual term of incarceration. *State v. Pope, supra,* at 10; *State v. Knox* (June 11, 1991), Franklin App. No. 89AP–1168, unreported, 1991 WL 115820.

In this case, as in *Pope,* the jury returned a guilty verdict on one count of aggravated robbery. In doing so, the jury had to have found that the appellee had a deadly weapon, to wit, a firearm, on or about his person or under his control during the commission of the crime. *Id.* "This, *standing alone,* renders [appellee] ineligible for probation. *Cf. State v. Koss* (1990), 49 Ohio St.3d 213, 219–220, 551 N.E.2d 970, 975–976 (although jury acquitted defendant of the gun specification, trial court correctly determined that defendant was ineligible for probation because the offense of voluntary manslaughter was committed with a firearm)."

"Thus, a criminal defendant armed with a firearm or dangerous ordnance when the offense was committed, with the exception of R.C. 2923.12 (carrying a concealed weapon), is conclusively ineligible for probation pursuant to R.C. 2951.02(F)(3), notwithstanding the absence of an express R.C. 2941.141 firearm specification." *State v. Pope* at 10–11. Therefore, the not guilty verdict on the firearm specification does nothing to change the status of the appellee's ineligibility for probation.

The appellee relies upon this court's decision in *State v. Anderson* (July 12, 1990), Cuyahoga App. No. 58743, unreported, 1990 WL 96074, wherein we held that the defendant was entitled to expungement of his criminal record for his conviction of aggravated robbery, as the offense was probationable. The *Anderson* court reasoned that, because the original trial record was not before the court, there was no evidence showing the gun specified in the indictment was capable of expelling projectiles and, therefore, the record failed to prove the gun was a "firearm" pursuant to R.C. 2923.11(B)(1). *Anderson* is distinguishable from the within case.

In this case, the original trial record is indeed before us and we are satisfied there was the requisite evidence presented to the jury that the gun the appellee was armed with was a "firearm" as defined in R.C. 2923.11(B)(1). In fact, the jury's finding on this point is not challenged on appeal. A review of the jury verdict form in the instant case reveals the jury convicted him of:

"Aggravated Robbery in violation of R.C. 2911.01, in that he did, on or about June 6, 1991, in the State of Ohio, County of Cuyahoga, in attempting or committing a theft offense, as defined in Section 2913.01 of the Revised Code, or in fleeing immediately after such attempt or offense upon Earle Dorman and/or Yellow Cab have a deadly weapon * * * on or about his person or under his control * * *."

The "deadly weapon" as referred to in the indictment was a "firearm."

As the offense in this case is non-probationable, the state's assignment of error is well taken.

Judgment is reversed and remanded for re-sentencing consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

MATIA, J., concurs.

JAMES D. SWEENEY, J., dissents.

JAMES D. SWEENEY, Judge, dissenting.

I must respectfully dissent. The essential question presented in this case is whether or not the appellee is eligible for probation when the prosecution has not proven, as a part of its case, that a gun used in an aggravated robbery was operable.

"Aggravated robbery" is defined in R.C. 2911.01:

"(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after such attempt or offense, shall do either of the following:

"(1) Have a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code, on or about his person or under his control;

"(2) Inflict, or attempt to inflict serious physical harm on another."

An offender shall not be placed on probation under R.C. 2951.02(F)(3) when a firearm is used while perpetrating an offense:

"(F) An offender shall not be placed on probation * * * when any of the following applies:

" * * *

"(3) The offense involved was not a violation of section 2923.12 of the Revised Code and was committed while the offender was armed with a firearm or dangerous ordnance, as defined in section 2923.11 of the Revised Code."

Both R.C. 2911.01 and 2951.02(F)(3) refer to R.C. 2923.11 for the definition of "firearm." The definitions of "deadly weapon" and of "firearm" are as follows:

"As used in sections 2923.11 to 2923.24 of the Revised Code:

"(A) 'Deadly weapon' means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon.

"(B)(1) 'Firearm' means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm which is inoperable but which can readily be rendered operable.

"(2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm."

The Ohio Supreme Court, in *State v. Murphy* (1990), 49 Ohio St.3d 206, 551 N.E.2d 932, held that in order for a defendant to receive an enhanced penalty pursuant to R.C. 2929.71(A), the state must prove beyond a reasonable doubt that the firearm was operable at the time of the offense. The testimony of a lay witness who was in a position to observe the instrument and the surrounding circumstances of the crime is sufficient to establish proof beyond a reasonable doubt.

This appellate court has held that a gun can be used as a deadly weapon in an aggravated robbery without being a firearm under R.C. 2951.02(F)(3). In *State v. Anderson* (July 12, 1990), Cuyahoga App. No. 58743, unreported, 1990 WL 96074, this court specifically stated that a gun is not *ipso facto* a firearm under R.C. 2923.11(B), and that to deny probation to a defendant, there must be a conviction for using a firearm. The court cited *Murphy, supra,* and noted that operability must be proven. To withhold probation, the General Assembly has required more than the use of a deadly weapon.

In the case *sub judice,* the state has failed to prove beyond a reasonable doubt that the gun allegedly seen by the victim was operable. On direct examination, the victim, Mr. Earl Dorman testified as follows:

"A. He came back to the cab. He had gotten out on this side here and started walking away (indicating). Then I said, where is the fare. And then he came back on this side of the cab, where I am on the driver's side, you know (indicating). [H]e came up to the door, and I said, where is the fare. And that is when he told me, 'Let me have your money.' That was it.

" * * * *

"Q. As he was saying, give me your money, let me have your money, did he have anything in his hands?

"A. He had the clothing over here, and here is where it appeared to be a gun, it appeared to be a gun underneath the dry cleaning.

"Q. What appeared to be a gun underneath the dry cleaning?

"A. Yes. It appeared to look like a silver automatic gun. I could see the muzzle of it.

"Q. Describe this gun if you would, please.

"A. Well, I could see that there was a muzzle. I could see or imagine it was a small caliber, more like probably something like a—I am not picking on any gender, but it would be more like what a woman would carry, like a small automatic gun. It was something like that.

"Q. Well, how did you feel when you saw the gun?

"A. Pretty scared.

"Q. Did you think it was a real gun?

"A. Of course I did.

"Q. What did you do next, Mr. Dorman?

"A. He said, let me have your money. I reached in and handed him the money that I had.

"Q. How much money did you give him at that time?

"A. I would imagine maybe $15, something like that or whatever. There was some singles, and a five.

"Q. What did he do after that?

"A. He just took off, walked away.

"Q. Did he ever say anything about any more money to you, sir?

"A. Well, he said, 'Is that it?' And I said, 'That is it.' "

When questioned about the gun on cross-examination, the victim responded:

"Q. Did he try to hit you with it?

"A. No.

"Q. Did he ever stick it in your face?

"A. No.

"Q. Did he stick it in your chest?

"A. No.

"Q. Did he ever unconceal the whole gun from under the dry cleaning?

"A. No.

"Q. So all you saw or know was what you believed to be a muzzle of a gun?

"A. What I saw was the muzzle of a gun.

"Q. He didn't fire the gun, did he?

"A. No, I wouldn't be here if he did.

"Q. Other than saying give me your money, did he threaten you with the gun in any way?

"A. No.

"Q. Did he ever say, if you don't give me your money, I am going to blow your brains out?

"A. All he said, give me your money. I gave him my money, that is all."

This testimony is not sufficient under *Murphy* to establish the operability of the gun. There is no testimony indicating the appellee fired the weapon, threatened to fire the weapon, or made any threats whatsoever.

A defendant may be found guilty of aggravated robbery if the jury believes a deadly weapon was used. Since a deadly weapon cannot, by definition, be a firearm without proof of operability, a trial judge is not prohibited from placing a defendant on probation where the state has failed to prove operability of a gun.

I would therefore affirm the trial court.