The STATE of Ohio, Appellant,

v.

JACKSON, Appellee.

[Cite as *State v. Jackson*, 165 Ohio App.3d 271, 2006-Ohio-262.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 21279.

Decided Jan. 13, 2006.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, Jon C. Marshall, Assistant Prosecuting Attorney, for appellant.

Patrick A. Southern, for appellee.

BROGAN, Judge.

{¶ 1} The state of Ohio appeals from the decision of the trial court suppressing evidence found on Myricke Jackson that resulted in his being charged with possession of cocaine and possession of criminal tools. The state's appeal is pursuant to R.C. 2945.67(A) and Crim.R. 12(K).

{¶ 2} On April 7, 2005, Detective Keith Coberly of the Dayton Police Department received information from Lt. Robert Chabali of the Dayton Police Department that Ernest Murphy was running a "boot joint" at 4001 Hoover Avenue, in the city of Dayton. Coberly drove by that location the next day and noticed that the property was for sale. Coberly made arrangements with Murphy to see the property, representing to Murphy that he was interested in buying it for a real

estate office. Coberly sent Detective R. St. Clair to view the property, and St. Clair noted that it appeared to be set up like a legitimate liquor establishment. Murphy told St. Clair that he had given the property to his son Mike, who had just gotten out of prison after serving five years, to keep him out of trouble. St. Clair later determined that "Mike" was Michael Minker, who had a recent conviction for trafficking in cocaine and engaging in a pattern of corrupt activity. Coberly conducted further surveillance of the building a few days later and observed people coming to and from the "boot joint." Based on this information, Coberly secured a search warrant to search the property. The issuing court found from the affidavit that there was probable cause to believe that weapons and firearms used in conjunction with the sale of alcoholic beverages would be concealed on the persons of Minker and Murphy.

{¶ 3} Officers from the Dayton Police Department arrived at 4001 Hoover Avenue on April 20, 2005, to serve a search warrant. Sgt. Mark Spiers, who had been a detective in the narcotics unit for three and a half years and who has been with the police department since 1984, was the lead officer on the scene.

{¶ 4} At the hearing, Sgt. Spiers testified that he had personally served search warrants six times on suspected "boot joints" and had been present in such places at least 12 times. He described a "boot joint" as "a commercial business that sells liquor without a liquor license. Also, they commonly do illegal gambling, and sometimes * * * they also sell dope or have dope activity going on inside." Sgt. Spiers testified that 4001 Hoover Avenue was suspected of being such a place, and he helped secure a search warrant for that property. An extensive investigation conducted prior to the execution of the warrant revealed that the address did not have a valid liquor license and that the inside was arranged and stocked as if it were in fact a legitimate tavern or bar. The search warrant sought, among other things, beer, wine, or liquor, and any items used in the sale, storage, or *consumption* of alcoholic beverages. The warrant also sought any contraband found on the premises.

{¶ 5} When the officers arrived at the building, Sgt. Spiers announced several times that the police were there and had a search warrant, even using a bullhorn after the first announcement. There was no response from the persons inside, so the officers entered the building through an open door. When they walked into the main room, Sgt. Spiers observed four persons: one was standing behind the bar and the three others were standing in front of it, as patrons would at a legitimate liquor establishment. It was at this time that Sgt. Spiers noticed Jackson, who appeared to be underage, standing directly in front of and well within reach of an open container of beer. The officers secured all four persons, whom the police believed to be suspects in the operation of this boot joint.

{¶ 6} Sgt. Spiers testified that in his extensive experience, it was common to find weapons in similar establishments, and therefore he had a legitimate, reasonable fear that one or more of these persons were armed. Spiers also noted that the search warrant authorized a search for weapons. Additionally, Sgt. Spiers observed Jackson consuming an alcoholic beverage while underage. When Sgt. Spiers conducted a pat down of Jackson, he felt soft material with lumps inside Jackson's pocket. Sgt. Spiers stated he had felt similar material hundreds of times before, and based on those experiences, he believed the material was powder cocaine. Spiers removed the material from Jackson's pocket and discovered the cocaine.

{¶ 7} In granting Jackson's suppression motion, the trial court noted that the police had not named facts specific to the defendant that would have created a reasonable belief that he was armed and dangerous. Furthermore, the court noted that while Sgt. Spiers testified that in his experience it is common to encounter weapons in boot joints, the affidavit for the search warrant contained no specific information that weapons were seen in connection with this particular boot joint. Citing *Ybarra v. Illinois* (1979), 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238, the trial court found that Jackson's mere presence as a patron in the boot joint was an insufficient basis to subject him to a frisk.

{¶ 8} In a single assignment of error, the state argues that the trial court erred when it found that the police did not have probable cause to frisk Jackson. The state argues that the facts in this matter are markedly different from those described in *Ybarra*. The state notes that Jackson, who appeared to be underage, was observed standing at the bar with an open beer in front of him. The state also notes that the search warrant explicitly stated that weapons were among the items sought in the search, and Sgt. Spiers testified that it was common to find weapons at boot joints and he was concerned that the four individuals might be armed.

{¶ 9} Jackson argues that his mere presence in the locale named in the search warrant did not authorize the state's intrusion into his privacy. He argues that police failed to articulate a reasonable basis to suspect that he was armed and dangerous and that the trial court properly granted his suppression motion.

{¶ 10} In *Ybarra*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238, officers entered a tavern with a valid search warrant authorizing search of other premises (and the bartender therein) for evidence related to drug trafficking. Upon entry, the officers lined up all patrons present and patted those persons down; the justification given for this intrusion was that officers were conducting a "cursory search for weapons." Id. at 88, 100 S.Ct. 338, 62 L.Ed.2d 238. During the course of the pat down of Ventura Ybarra, the investigating officer felt a lump in his pocket that was clearly not a weapon. The officer reached into Ybarra's

pocket and removed a cigarette container that was found to contain heroin. Following indictment, Ybarra was convicted of possession of heroin by the trial court, a decision upheld by the appellate courts of Illinois. However, the conviction was later overturned by the Supreme Court of the United States, which held that the search violated Ybarra's constitutionally protected rights.

{¶ 11} The Supreme Court held that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give probable cause to search that person." Id. at 86, 339, 100 S.Ct. 338, 62 L.Ed.2d 238. In stating the facts that led to the court's conclusion in *Ybarra*, Justice Stewart noted:

{¶ 12} "When the police entered the Aurora Tap Tavern on March 1, 1976, the lighting was sufficient for them to observe the customers. Upon seeing Ybarra, they neither recognized him as a person with a criminal history nor had any particular reason to believe that he might be inclined to assault them. Moreover, as Police Agent Johnson later testified, Ybarra, whose hands were empty, gave no indication of possessing a weapon, made no gestures or other actions indicative of an intent to commit an assault, and acted generally in a manner that was not threatening." *Ybarra* at 93, 100 S.Ct. 338, 62 L.Ed.2d 238.

{¶ 13} In *State v. Taylor* (1992), 82 Ohio App.3d 434, 612 N.E.2d 728, we upheld the trial court's refusal to grant a motion to suppress evidence found during a frisk of a person who had been on the premises of a crack house but had not been named in the search warrant as a person subject to search if found on the premises. We found that it was common knowledge that drugs and weapons are frequently found in close proximity and that the trial court could have concluded that it was reasonable for police to perform a *Terry* frisk for weapons of anyone present in a suspected crack house.

{¶ 14} In this case, Sgt. Spiers said he had frisked Jackson because he was present in the boot joint as a customer and weapons are commonly found in boot joints. In *Ybarra*, the police officers executing the warrant did not articulate any reason for suspecting that the patrons of the public bar might be armed and dangerous, therefore the Supreme Court properly suppressed the evidence seized from the defendant after he was frisked. Unlike the situation in this case, there was no testimony in *Ybarra* that it was common to find weapons in places such as the bar that was searched in that case. As with determining whether probable cause existed, determining whether reasonable suspicion existed cannot readily be accomplished by applying a neat set of rules. *Illinois v. Gates* (1983), 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527. The level of suspicion required is considerably less than proof by a preponderance of the evidence. *Gates* at 238, 103 S.Ct. 2317, 76 L.Ed.2d 527. The question is whether there is a fair possibility from the facts confronting the officer that the suspect

may be armed and dangerous. Here, the police officer testified under oath that it is common for persons at boot joints to carry weapons. There was no evidence presented to the contrary. We believe that the trial court erred in suppressing the evidence found by Sgt. Spiers on the defendant, because the frisk of Jackson was reasonable under the circumstances. The state's assignment of error is sustained. The judgment of the trial court is reversed, and the cause is remanded for further proceedings.

> Judgment reversed
> and cause remanded.

GRADY, P.J., and WOLFF, J., concur.