OPINION
{¶ 1} Defendant-appellant, DeMarian Javon Harry, appeals the decision of the Butler County Court of Common Pleas convicting him of possession and trafficking of marijuana with firearm specifications. We affirm in part, and reverse in part, the decision of the trial court.
 {¶ 2} Acting on information from confidential informants, their own surveillance, and an anonymous complainant, Butler County Sheriff's deputies obtained a search warrant for *Page 2 
225 Cereal Avenue, Hamilton, Ohio, to search for, inter alia, drugs, drug related paraphernalia, and weapons. Upon executing that warrant, they located appellant and five others, within the home, along with approximately 55 pounds of marijuana, more than $15,000 in cash, ledgers, scales, zip-lock plastic bags, and four firearms.
 {¶ 3} Appellant filed a motion to suppress the evidence seized pursuant to the search warrant. The trial court denied the motion to suppress based on the "good faith" exception to the exclusionary rule as articulated in United States v. Leon (1984), 468 U.S. 897,104 S.Ct. 3405. After a jury trial, appellant was found guilty of trafficking in marijuana in violation of R.C. 2925.03(A)(2) and possession of marijuana in violation of R.C. 2925.11, both of which included a firearm specification. As a result, appellant was sentenced to 11 years in prison. Appellant now appeals his conviction and sentence raising five assignments of error.
 {¶ 4} Assignment of Error No. 1:
 {¶ 5} "THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED FROM THE RESIDENCE WHERE HE WAS SPENDING THE NIGHT AS AN INVITED GUEST, IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND PARALLEL OHIO CONSTITUTIONAL PROVISIONS."
 {¶ 6} Appellant argues that the trial court erred in denying his motion to suppress because the affidavit did not supply timely information required for probable cause and did not supply facts for the issuing judge to assess the reliability of the informants or make an independent determination of probable cause. Appellant further argues that the warrant cannot be saved by the good faith exception to the exclusionary rule. We find no merit to appellant's argument.
 {¶ 7} Appellate review of a trial court's ruling on a motion to suppress is a mixed question of law and fact. State v. Long (1998),127 Ohio App.3d 328, 332. During *Page 3 
proceedings on a motion to suppress, the trial court assumes the role of a trier of fact. Id. The trial court is thus responsible for evaluating the evidence and the credibility of the witnesses and its findings should be accepted unless they are clearly erroneous. Id. A reviewing court must accept a trial court's factual determinations from a suppression hearing "so long as they are supported by competent and credible evidence." Id. "The application of the law to those facts, however, is then subject to a de novo standard of review." Id.
 {¶ 8} When reviewing an affidavit in support of a search warrant neither the trial court nor the appellate court should substitute their judgment in the place of the issuing judge by determining whether there was sufficient probable cause to issue the warrant. State v.Dunihue, 161 Ohio App.3d 731, 733-734, 2005-Ohio-3223, ¶ 6 citing,State v. George (1989), 45 Ohio St.3d 325, paragraph two of the syllabus. A reviewing court need only ensure that the issuing judge had "a substantial basis for concluding that probable cause existed." Id. Furthermore, upon review a court must afford deference to the issuing judge's determination and any doubt "should be resolved in favor of upholding the warrant." Id. Therefore, the question before a reviewing court is whether, under a totality of the circumstances, the affidavit, which served as the basis for the search warrant, provided a "substantial basis" for the issuing judge to conclude that there was a "fair probability" that marijuana, drug paraphernalia, documents, monies, weapons, etc. would be found at 225 Cereal Avenue.George at 330.
 {¶ 9} After a warrant is found to be defective, some federal courts have found that a court may immediately apply the good faith exception to the exclusionary rule. See, e.g., United States v. Cancelmo (C.A.2, 1995), 64 F.3d 804, 807; United States v. Satterwhite (C.A.5, 1992),980 F.2d 317, 320. However, the courts in this state have applied a two-step approach to the affidavit in support of a search warrant analysis.George, 45 Ohio St.3d at 332. A reviewing court must first determine that the affidavit, on which the search warrant *Page 4 
was based, provided a "substantial basis" for the issuing judge to conclude that there was a "fair probability" that the person or thing to be seized would be at the place to be searched. Id. Only after that determination, may a reviewing court then advance to the good faith exception to the exclusionary rule. Id. Indeed, "even though it might [seem] * * * unnecessary to determine the existence of probable cause, it is always necessary to determine whether there is any reasonable argument to support probable cause." State v. Reniff,146 Ohio App.3d 749, 2001-Ohio-4353, ¶ 26. Were a reviewing court to immediately apply the good faith exception to the exclusionary rule, rather than following the first step in the analysis, it would undermine the importance of theFourth Amendment's protections.
 {¶ 10} In this case, the trial court did not determine whether probable cause existed. Instead, the trial court found that the good faith exception applied to the sheriff's search of 225 Cereal Avenue. We find that based on Ohio law, the existence of probable cause must be the starting point for any analysis. Because we find that the issuing judge had a substantial basis for concluding that probable cause existed, we find it unnecessary to determine whether the trial court's good faith analysis was correct.
 {¶ 11} Appellant focuses the first part of his argument on: (1) the timeliness of the information contained within the affidavit; and (2) the sufficiency of nexus between the evidence sought and the place searched.
 {¶ 12} The law of search and seizure requires that an affidavit demonstrate that the information is timely. State v. Jones (1991),72 Ohio App.3d 522, 526. The facts must be closely related to the time the warrant is issued in order to justify probable cause. Id., citingSgro v. United States (1932), 287 U.S. 206, 210, 53 S.Ct. 138. These facts are examined on a case by case basis. Id. at 526. "While there is no arbitrary time limit on how old information can be, the alleged facts must justify the conclusion that the subject contraband is probably on the person or premises to be searched." Id. citing State v.Yanowitz (1980), *Page 5 67 Ohio App.2d 141, 147.
 {¶ 13} Intermittent occurrences may not be considered timely, but "a pattern of conduct" or indications of an "ongoing investigation," even where older information is concerned, can be found to be timely. Id.;State v. Prater, Warren App. No. CA2001-12-114, 2002-Ohio-4487, ¶ 13. "In determining whether information in an affidavit is stale, courts should consider: (1) the character of the crime; (2) the criminal; (3) the thing to be seized, as in whether it is perishable and easily transferable or of enduring utility to its holder; (4) the place to be searched; and (5) whether the information in the affidavit relates to a single isolated incident or protracted ongoing criminal activity."Prater at ¶ 13.
 {¶ 14} In this case, the affidavit stated that within the past two months the sheriff's office had received information from both a reliable confidential informant and the DEA that marijuana was being transported from Phoenix, Arizona to Hamilton, Ohio and co-defendant Jeffrey Craft was receiving the shipments. The affidavit also stated that an anonymous complainant informed the sheriff's office that within the past 72 hours a shipment of marijuana was brought to Hamilton from Phoenix and was being stored at 225 Cereal Avenue. The police also conducted surveillance activity within that 72-hour period, and within three hours of the warrant's issue, observed vehicles belonging to Craft and his relatives, parked outside 225 Cereal Avenue. These facts indicate that there was an ongoing investigation of the home, and the parties involved, which spanned at least two months.
 {¶ 15} Finally, trafficking is a crime where there is constant movement of drugs as they are often portable and easily transferrable.United States v. Chapman (C.A.6, 2004), 112 Fed Appx. 469, 473. Therefore, when evidence is determined to show that drugs will be at a place at a particular time, the police may have to act quickly before the drugs are moved and/or sold. The affidavit clearly presented enough timely information to suggest that the marijuana would be located at 225 Cereal Avenue and provided a substantial basis for the issuing judge *Page 6 
to believe that the drugs were located in the residence.
 {¶ 16} Closely related to the issue of timeliness is the condition of Crim. R. 41(C) which requires that there be a "nexus" between the place to be searched and the items to be seized. State v. O'Conner, Butler App. No. CA2001-08-195, 2002-Ohio-4122, ¶ 10; State v. King, Butler App. No. CA2008-03-085, 2008-Ohio-5840; United States v. Carpenter (C.A.6, 2004), 360 F.3d 591, 594. In other words, the affidavit must state specific facts that show that the evidence sought would be found at 225 Cereal Avenue. See Carpenter at 594.
 {¶ 17} In particular, the affidavit stated that a reliable confidential informant notified the sheriff's office that marijuana was being stored and sold from a house in West Hamilton, and tied the receipt of the marijuana to co-defendant Craft. The affidavit also had information from the DEA tying Craft to the residence through a truck rented by Craft's relative.[1] Also contained within the affidavit were statements from confidential informants, anonymous complainants and suspects arrested on other charges connecting co-defendant Craft with a "marijuana operation" and that Craft was storing drugs at homes belonging to both Craft and his relatives. Finally, the affidavit noted that an anonymous complainant contacted the sheriff's office and said marijuana was being stored at 225 Cereal Avenue, which was later found to be owned by Craft's relative. Therefore, there was a sufficient nexus connecting 225 Cereal Avenue to the marijuana, drug paraphernalia, documents, monies, weapons, etc. sought by the warrant; and a substantial basis for the issuing judge to believe that the drugs were located at the residence.
 {¶ 18} Finally, appellant argues there were insufficient facts the issuing judge could use to assess informant reliability, and make an independent determination of probable cause. *Page 7 
We find that there was sufficient information within the affidavit for the issuing judge to evaluate the reliability of the informants and find probable cause.
 {¶ 19} With the adoption of the Gates "totality of the circumstances" test, a judge issuing a search warrant is required "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates (1983), 462 U.S. 213, 238-39, 103 SCt. 2317
(internal quotations and a citation omitted). Additionally, Crim. R. 41(C) allows an issuing judge to find probable cause "on hearsay in whole or in part, provided there is a substantial basis for believing the source of hearsay to be credible and for believing that there is a factual basis for the information." See, also, State v. Sharp (1996),109 Ohio App.3d 757, 760.
 {¶ 20} Where a confidential or anonymous informant is the source of the hearsay, the "informant's veracity, reliability and basis of knowledge are all highly relevant" in a totality of the circumstances probable cause determination. Gates at 230 (internal quotations omitted). There must be some basis in the affidavit to indicate the informant's credibility, honesty or reliability. Sharp at 760. An affidavit which contains detailed information from informants (permitting an inference that illegal activity was personally observed by the informants), police corroboration of an informant's intelligence through its own independent investigation, or additional testimony by the affiant helps to bolster and substantiate the facts contained within the affidavit. State v. Ingram (Sept. 26, 1994) Butler App. No. CA94-03-076, at 4-5; State v. Rodriguez (1989), 64 Ohio App.3d 183, 188. While individual facts and statements themselves may not separately support a probable cause determination; a reviewing court must weigh all of the components together because "[p]robable cause is the sum total of [all] layers of information." State v. Young, Clermont App. No. CA2005-08-074, 2006-Ohio-1784, ¶ 26, *Page 8 
quoting United States v. Nigro (C.A.6, 1984), 727 F.2d 100, 104
(internal quotations omitted).
 {¶ 21} The affidavit stated that a tip was received from a reliable confidential informant regarding marijuana being sold at a home in the Westside of Hamilton and that co-defendant Craft was receiving the marijuana from Arizona. The DEA contacted the sheriff's office to let them know that a cooperative defendant gave them information that Craft was receiving marijuana from Arizona. The DEA also stated that a particular rental vehicle was being driven by the Arizona dealer and Craft, which the sheriff's office confirmed was parked outside Craft's residence. The affidavit contained information from confidential informants and other anonymous complainants that linked Craft and a "marijuana operation" to a shooting incident in the city of Hamilton. There was information in the affidavit from suspects, whom the sheriff's office had arrested on unrelated charges, indicating that Craft was in possession of a large quantity of marijuana, which was being stored at his home and the homes of his relatives. The affidavit stated that the sheriff's office had received information from an anonymous complainant that the Arizona dealer was bringing 40 to 50 pounds of marijuana to Hamilton. That anonymous complainant further notified the sheriff's office when the marijuana arrived and said it was being stored at 225 Cereal Avenue.
 {¶ 22} Also contained within the affidavit was the fact that sheriff's office conducted surveillance of 225 Cereal Avenue and saw vehicles, registered to Craft's relative, which were parked out front. The sheriff's office further researched 225 Cereal Avenue and found that it was owned by Craft's relative, and the utilities were registered under the same name. Finally, the affidavit stated that there was a relationship between Craft and the owner of 225 Cereal Avenue, and a relationship between Craft and the person to whom the vehicles were *Page 9 
registered which were located at 225 Cereal Avenue.[2] While none of the informants or claimants were identified, it is clear that they had specific information, which they may have personally observed, some of which was corroborated by the sheriff's office. We find that all of the facts in the affidavit, when viewed together, were sufficient to show there was fair probability that marijuana would be found at 225 Cereal Avenue.
 {¶ 23} Somewhat related to the reliability and source of information argument is the requirement that the issuing judge make an independent determination that probable cause exists before issuing the warrant.State v. Rodriguez (1989), 64 Ohio App.3d 183,188. There must be sufficient information within the affidavit, in the form of facts rather than conclusions, in order for an issuing judge to make a probable cause determination. Illinois v. Gates, 462 U.S. at 239. An issuing judge may not merely ratify the "bare conclusions of others." Id. If an affidavit is "framed solely in conclusory terms [it] is deficient in that it prevents a magistrate from exercising independent review and robs theFourth Amendment of its essence." State v. Goddard (Oct. 2, 1998), Washington App. No. 97CA23, 1998 WL 716662 at *4, citing Katz, Ohio Arrest, Search Seizure (1998 Ed.), Section 3.03(A). Indeed, the protections of the Fourth Amendment ensure that inferences are drawn by a neutral and detached magistrate rather than an officer of the law who is engaged in fighting crime. Johnson v. United States (1948),333 U.S. 10, 13-14, 68 S.Ct. 367.
 {¶ 24} Although we note that the "boiler-plate" language in the affidavit under the description of affiant's training, investigation, and participation in other investigations involving drug violation in Ohio contains some statements which may seem conclusory, they are merely generalized statements, many of which are common knowledge, about the habits and preferences of drug dealers. After careful review of the statements contained within the *Page 10 
affidavit, which have been previously mentioned in this opinion, we find that the affidavit contained facts, rather than conclusions, which allowed the issuing judge to make an independent determination of probable cause in finding there was a fair probability that marijuana would be found at 225 Cereal Avenue.
 {¶ 25} In conclusion, for the foregoing reasons we find that under a totality of the circumstances analysis, the affidavit filed in support of the warrant provided a substantial basis for the issuing judge to conclude there was a fair probability that marijuana, drug paraphernalia, documents, monies, weapons, etc. would be found at 225 Cereal Avenue. As we have determ ined that probable cause existed it is not necessary to address the question of the good faith exception to the exclusionary rule or appellant's arguments against its application. See, e.g. State v. Easter (Sept. 9, 1992), Summit App. No. 15537,1992 WL 224499, at *3; State v. Dotson (Aug. 1, 1988), Richland App. No. 2568,1988 WL 82138, at *2.
 {¶ 26} Assignment of Error No. 2:
 {¶ 27} "THE TRIAL COURT ERRED IN ENTERING SEPARATE CONVICTIONS AND SENTENCES FOR 2925.11 AND 2925.03(A)(2), WHEN BOTH CHARGES INVOLVED THE SAME DRUG."
 {¶ 28} In his second assignment of error, appellant argues that his charges for possession and for trafficking under R.C. 2925.03(A)(2) are allied offenses of similar import, and as such he may only be convicted under one or the other crime, but not both. We agree with appellant. Furthermore, the state concedes this assignment of error and urges this court to reverse and remand this case to the trial court for resentencing.
 {¶ 29} The Ohio Supreme Court recently determined that trafficking of a controlled substance under R.C. 2925.03(A)(2) and possession of that same substance were allied offenses of similar import pursuant to R.C. 2941.25(A) because, "commission of the first offense [trafficking]necessarily resulted] in commission of the second [offense of *Page 11 
possession]." State v. Cabrales, 118 Ohio St.3d 54, 2008-Ohio-1625, ¶ 30
(emphasis in the original).[3] The single animus requirement is also met because the defendant in Cabrales was found to have "trafficked and possessed the marijuana with a single animus: to sell it" and could not be convicted of both offenses. Id. at ¶ 31.
 {¶ 30} In this case, appellant clearly intended to sell the marijuana as scales, zip-lock plastic bags, and more than just "recreational" amounts of marijuana were found in the house. Moreover, the state concedes that the offenses are allied pursuant to the Cabrales decision. Therefore, appellant's second assignment of error is sustained, and we reverse the sentences for drug possession in violation of R.C. 2925.11
and trafficking in violation of R.C. 2925.03(A)(2) and remand this case to the trial court to sentence appellant accordingly.
 {¶ 31} Assignment of Error No. 3:
 {¶ 32} "THE TRIAL COURT ERRED TO DEFENDANT'S PREJUDICE BY INSTRUCTING THE JURY THAT MERE PRESENCE WAS SUFFICIENT TO SUPPORT A FINDING OF CONSTRUCTIVE POSSESSION, IN VIOLATION OF THE DUE PROCESS CLAUSES OF THE OHIO AND UNITED STATES CONSTITUTIONS."
 {¶ 33} In his third assignment of error, appellant contends that the jury instruction the trial court gave with regards to the element of possession, specifically constructive possession, created an impermissible inference which usurped the jury's role in the adjudication process. We find appellant's argument to be without merit.
 {¶ 34} A jury instruction must be a "plain, distinct and unambiguous statement of the law." Marshall v. Gibson (1985), 19 Ohio St.3d 10, 12. Therefore, a trial court will only be reversed if the instruction given in error is so misleading so as to prejudice the party who seeks the reversal. LeForge v. Nationwide Mut. Fire Ins. Co. (1992),82 Ohio App.3d 692, *Page 12 
699.
 {¶ 35} Jury instructions are matters which are left to the sound discretion of the trial court. State v. Guster (1981),66 Ohio St.2d 266, 271. Thus, where a trial court denies a request for an instruction, the appellate court's review is under an abuse of discretion standard.State v. Wolons (1989), 44 Ohio St.3d 64, 68. An abuse of discretion is more than an error of law or judgment, it indicates the trial court's judgment was unreasonable, arbitrary or unconscionable. Id. at 447.
 {¶ 36} "[A] single instruction to a jury may not be judged in artificial isolation but must be viewed in the context of the overall charge." Cupp v. Naughten (1973), 414 U.S. 141, 146-147, 94 S.Ct. 396. In order to determine whether an erroneous jury instruction was prejudicial, a reviewing court must examine the jury instructions as a whole. State v. Van Gundy, 64 Ohio St.3d 230, 233-34, 1992-Ohio-108.
 {¶ 37} In this case, appellant argues that a portion of the possession instruction regarding constructive possession was prejudicial and in error because it was a conclusory statement. However, by looking at the instruction as a whole, we cannot say that the court abused its discretion. The instruction in pertinent part states:
 {¶ 38} "Although mere presence of a person in the vicinity of contraband is not enough to support the element of possession, if the evidence demonstrates the defendant was able to exercise dominion or control over the illegal objects, the defendant can be convicted of possession. Equally, when an amount of readily usable drug is in close proximity to a defendant, this constitutes circumstantial evidence to support the conclusion that the defendant was in constructive possession of the drugs. Constructive possession also requires a showing of conscious possession or that the defendant had knowledge that the mari[j]uana was on the premises."
 {¶ 39} Appellant contends that the statement: "[e]qually, when an amount of readily *Page 13 
usable drug is in close proximity to a defendant, this constitutes circumstantial evidence to support the conclusion that the defendant was in constructive possession of the drugs" should have included a more permissive language such as "may constitute," rather than the language the trial court used. Although the change may have made the sentence clearer, we find that the surrounding language, when read in its entirety, conveys the correct concept of constructive possession. The entire instruction allowed the trier of fact to make an inference, based on the evidence adduced at trial, that appellant was guilty of possession. Therefore, we cannot say that the trial court's decision was an abuse of discretion when the court chose to give the constructive possession instruction. Appellant's third assignment of error is overruled.
 {¶ 40} Assignment of Error No. 4:
 {¶ 41} "THE TRIAL COURT ERRED TO DEFENDANT'S PREJUDICE BY ACCEPTING AND JOURNALIZING VERDICTS OF GUILTY TO POSSESSION AND TRAFFICKING, IN VIOLATION OF THE DUE PROCESS CLAUSES OF THE OHIO AND UNITED STATES CONSTITUTIONS."
 {¶ 42} In his fourth assignment of error, appellant argues that the evidence was insufficient to establish that appellant was a participant in the criminal activity, and the jury verdict was against the manifest weight of the evidence. We find no merit to appellant's argument.
 {¶ 43} Arguments regarding insufficient evidence and manifest weight of the evidence are reviewed under two different standards. State v.Martin (1993), 20 Ohio App.3d 172, 175. Sufficiency of evidence is governed by Crim. R. 29. State v. Terry, Fayette App. No. CA2001-07-012, 2002-Ohio-4378, ¶ 9, citing State v. Williams, 74 Ohio St.3d 569, 576,1996-Ohio-91; State v. Miley (1996), 114 Ohio App.3d 738, 742. "[A] [trial] court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different *Page 14 
conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman (1978),55 Ohio St.2d 261, paragraph one of the syllabus. The legal sufficiency of evidence necessary to sustain a verdict is a question of law. State v.Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52.
 {¶ 44} An appellate court "need only find that there was legally sufficient evidence to sustain the guilty verdict." State v.Feltner, Butler App. No. CA2008-01-009, 2008-Ohio-009, ¶ 11, citingThompkins at 386. A reviewing court must "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt."State v. Jenks (1991), 61 Ohio St.3d 260, 273 (superseded by state constitutional amendment on other grounds in State v. Smith,80 Ohio St.3d 89, 1997-Ohio-355). The focus of this court's inquiry is: "after viewing the evidence in a light most favorable to the state, whether any rationale trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
 {¶ 45} An appellate court may only reverse a jury verdict as against the manifest weight of the evidence where there is a unanimous disagreement with the verdict of the jury. State v. Gibbs (1999),134 Ohio App.3d 247, 255-56. Under the manifest weight of the evidence standard, a reviewing court must examine the entire record, weigh all of the evidence and reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 720-21; Gibbs at 256; Thompkins,78 Ohio St.3d at 387.
 {¶ 46} Sufficiency of the evidence is required before a case may be taken to a jury, therefore where a conviction is supported by the manifest weight of the evidence there is *Page 15 
necessarily a finding of sufficiency. Thompkins, 78 Ohio St.3d at 388;State v. Wilson, Warren App. No. CA2006-01-007, 2007-Ohio-2298, ¶ 35. Therefore, where a conviction is supported by the manifest weight of the evidence it is also dispositive as to a claim of insufficiency of the evidence. State v. Lee, 158 Ohio App.3d 129, 2004-Ohio-3946, ¶ 18;Wilson at ¶ 35.
 {¶ 47} Appellant contends that his presence in the room where the drugs were found does not establish that he was in possession of the drugs or engaging in drug trafficking. He further argues that the firearm specification was not supported by the evidence because appellant was unaware of any weapon in his reach or control, as the only weapon directly connected to him was upstairs in another room.
 {¶ 48} We find appellant's conviction for possession is not against the manifest weight of the evidence. R.C. 2925.11 states in pertinent part that "[n]o person may * * * possess * * * a controlled substance." Possession cannot be inferred by "mere access" to the substance, instead it must be shown by the exercise of control over the substance. R.C. 2925.01(K). A person may be in actual or constructive possession of a substance. See State v. Wolery (1976), 46 Ohio St.2d 316, 329. A party has constructive possession where, conscious of its presence, he exercises dominion and control over something even though it is not within his immediate physical possession. State v. Hankerson (1982),70 Ohio St.2d 87, 91. "[O]wnership need not be proven to establish constructive possession." State v. Collins, Summit App. No. 23005,2006-Ohio-4722, at ¶ 11, citing State v. Mann (1993),93 Ohio App.3d 301, 308. "The crucial issue is not whether the accused has actual physical contact with the controlled substance but, rather, whether the accused is capable of exercising dominion and control over the substance." State v. Brooks (1996), 113 Ohio App.3d 88, 90. Finally, evidence that a person was located in close proximity to readily usable drugs may be used to show that the person was in constructive possession of the drugs. State v. Barr *Page 16 
(1993), 86 Ohio App.3d 227, 235.
 {¶ 49} In this case, almost 55 pounds of marijuana was found inside the basement where appellant was also located, so that appellant was capable of exercising dominion and control over the marijuana. The deputies also testified that there was a heavy smell of marijuana coming from the basement, indicating appellant was conscious of the presence of marijuana. Because the deputies were subject to direct and cross-examination, the jury was certainly able to assess the credibility of the witnesses with regards to their testimony. Finally, appellant's phone was located next to a duffle bag containing 11 zip-lock bags filled with marijuana, which indicates that he was, at least at one point in time, in close proximity to the marijuana. After reviewing the record and weighing all of the evidence, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice requiring reversal of appellant's conviction for possession.
 {¶ 50} Appellant's conviction for drug trafficking is also not against the manifest weight of the evidence. R.C. 2925.03(A)(2) states, "[n]o person shall prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person." Circumstantial evidence may be used to establish any element of any crime. Jenks, 61 Ohio St.3d at paragraph one of the syllabus. Numerous courts have determined that plastic baggies, digital scales, and large sums of money are often used in drug trafficking which constitute circumstantial evidence that appellant was using these items to commit that crime. E.g., State v. Kutsar, Cuyahoga App. No. 89310,2007-Ohio-6990, ¶ 20; State v. Fain, Delaware App. No. 06CAA120094,2007-Ohio-4854; State v. Smith, Union App. No. 14-01-28, 2002-Ohio-5051;State v. Frye, Summit App. No. 23211, 2007-Ohio-3240; State v.Malott, Butler App. Nos. CA2007-02-006, CA2007-02-007, CA2007-02-008,2008-Ohio-2114. *Page 17 
 {¶ 51} In this case, the deputies found plastic zip-lock bags, scales, ledgers, and large sums of cash inside the home where appellant was arrested which are indicative of drug trafficking. Approximately 55 pounds of marijuana were found in the home, some of which had already been measured into zip-lock bags, presumably for distribution and sale. A witness testified that her nephew, co-defendant Craft, asked to leave a trailer, rented by co-defendant David Garcia, on the witness' property. That trailer was brought to the witness' property by Craft, appellant, and an unidentified third person. Craft's uncle then testified that he observed men, one of whom may have been appellant, moving items in black trash bags from the trailer into another vehicle. Craft's uncle also testified that he personally found a black trash bag containing marijuana behind the trailer. This testimony indicated to the jury that the marijuana was being transported by appellant as further evidence of his involvement in the crime of trafficking. After careful review of the record and evidence, we find that appellant's conviction for trafficking was not against the manifest weight of the evidence, as the jury did not lose its way or engage in a miscarriage of justice.
 {¶ 52} Finally, appellant's conviction for the firearm specification is not against the manifest weight of the evidence. R.C. 2941.141 is a "penalty enhancement statute" which imposes a one-year mandatory term upon any offender who "had a firearm on or about the offender's person or under the offender's control while committing the offense." State v.Ervin (1994), 93 Ohio App.3d 178,179-80. A trier of fact may consider all relevant facts and circumstances surrounding a crime.Thompkins, 78 Ohio St.3d at 385. This may also include the common fact that drugs and weapons are often found within close proximity to one another. State v. Jackson, 165 Ohio App.3d 271, 2006-Ohio-262, ¶ 13;State v. Taylor (1992), 82 Ohio App.3d 434, 444. As with any other crime, a firearm specification can be proven using circumstantial evidence. State v. Jackson, 169 Ohio App.3d 440, 2006-Ohio-6059, ¶ 27, citing Thompkins at 385. *Page 18 
 {¶ 53} In order for a defendant to be convicted of a firearm specification, the state must first prove that the firearm existed and it was operable at the time the offense was committed. State v.Murphy (1990), 49 Ohio St.3d 206, 208. The state must then establish, beyond a reasonable doubt, that the offender committed a felony, and the offender had the weapon on or about his person or under his control while committing the felony. State v. Boyce (1985), 21 Ohio App.3d 153, paragraph one of the syllabus. When a weapon is not found on the defendant's person, but instead found in another room, the weapon may be under a defendant's control for the purposes of R.C. 2941.141. State v.Brown (1995), Ohio App.3d 194 (finding that a weapon found in a bedroom, while defendant was in the living room, was under defendant's control);State v. Conway, Cuyahoga App. No. 86140, 2005-Ohio-6634, ¶ 12 (finding a weapon in a dresser drawer next to some drugs, while the defendant was arrested downstairs, was under defendant's control). A conviction under R.C. 2941.141 does not require a defendant to use the firearm to commit a felony, nor acquire the weapon before the felony is committed.State v. Powell (1991), 59 Ohio St.3d 62, 63. Instead, all that is necessary is that the defendant have the firearm on or about his person of under his control "at some point" during the crime's commission. Id. (Emphasis added). See, also, State v. McKinney, Lake App. No. 2000-L-210, 2002-Ohio-4360, ¶ 25; State v. Calvin, Marion App. No. 9-2000-07, 2000 WL 1049316 at *6, 2000-Ohio-1713; State v. Wilkins, Clinton App. No. CA2007-03-007, 2008-Ohio-2739, ¶ 27.
 {¶ 54} The jury found appellant guilty of committing two felonies. A detective further testified that all of the weapons found at 225 Cereal Avenue were test fired and found to be operational. Three of the weapons were located in the basement where appellant was found. Another weapon, which was found in the kitchen on the first floor of the residence, was tested for fingerprints and appellant's fingerprint was found on the magazine. Even though the weapons were not on or about appellant's person when the deputies arrived; due to their *Page 19 
location in the home, the jury could reasonably conclude that the weapons were under appellant's control, at some point, when he committed the crimes of possession and/or trafficking. Therefore, after reviewing the record and weighing all of the evidence, we find that the jury did not lose their way and create such a manifest miscarriage of justice that we would be required to reverse appellant's conviction for the firearm specification.
 {¶ 55} In conclusion, we find that appellant's convictions for possession and drug trafficking with fire arm specifications were not against the manifest weight of the evidence. Therefore, appellant's fourth assignment of error is overruled.
 {¶ 56} Assignment of Error No. 5:
 {¶ 57} "THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO STRIKE THE TESTIMONY OF AN EXPERT WITNESS AS TO FINGERPRINT IDENTIFICATION, IN VIOLATION OF OHIO EVIDENCE RULES 703 705, AND THE DUE PROCESS CLAUSES OF THE UNITED STATES AND OHIO CONSTITUTIONS."
 {¶ 58} In his final assignment of error, appellant argues that the trial court erred by not striking the fingerprint expert's testimony because the expert did not express her opinion to a reasonable degree of scientific certainty and did not base her opinion on personal observations or admitted evidence or disclose the underlying facts or basis for her testimony as required by Evid. R. 703 and 705.
 {¶ 59} The decision to admit or to exclude expert testimony lies within the sound discretion of the trial court. State v. Awkal,76 Ohio St.3d 324, 332, 1996-Ohio-395. Abuse of discretion is more than an error of law or judgment; it implies a trial court's decision was unreasonable, arbitrary or unconscionable. State v. Adams (1980),62 Ohio St.2d 151, 157-58. Application of the abuse of discretion standard of review does not allow an appellate court to merely substitute its judgment for that of the trial court. State v. Midwest Pride IV,Inc. (1998), 131 Ohio App.3d 1, 20. *Page 20 
 {¶ 60} "Ohio courts permit a qualified expert interpreting certain scientific or medical facts which are beyond the experience, knowledge or understanding of the jury to express an opinion as to the probability or actuality of a fact pertinent to an issue in the case." State v.Brown (1996), 112 Ohio App.3d 583, 597, citing Brandt v. Mansfield RapidTransit, Inc. (1950), 153 Ohio St. 429; Shepherd v. Midland Mut. LifeIns. Co. (1949), 152 Ohio St. 6 paragraph two of the syllabus. "[Fingerprint identification is beyond a lay person's knowledge or experience and expert testimony is permitted in this area." State v.Williams (Dec. 3, 1996), Richland App. No. 95CA93, 1996 WL 753216 at *10, citing State v. Allen, 73 Ohio St.3d 626, 636, 1995-Ohio-283.
 {¶ 61} Appellant first argues that the fingerprint expert, Robin Roggenbeck, did not state her opinion with any reasonable degree of certainty. Instead, appellant claims Roggenbeck's testimony was based on possibility rather than probability and should not have been considered by the jury. In Brown, this court stated that an expert's conclusion must be an opinion based on "reasonable medical or scientific certainty." Id. at 597.
 {¶ 62} However, we also noted in Brown that experts could also testify "to observable characteristics of the available evidence, including the possibilities, consistencies and inconsistencies indicated by the evidence, thereby providing circumstantial evidence that the defendant committed the offense." Id. The fact that an expert's conclusion is not made with reasonable scientific certainty is a consideration affecting the weight of the testimony, and not its admissibility. Id.
 {¶ 63} Roggenbeck testified she was able to photograph fingerprints from some of the evidence submitted to her by the Butler County Sheriff's Office. She then compared the fingerprints to known prints from the fingerprint cards of appellant, and his co-defendants Craft and Garcia. Roggenbeck testified that fingerprints matching appellant and co-defendant Craft were found on the evidence, namely appellant's prints were found on the magazine of *Page 21 
the weapon found in the kitchen at 225 Cereal Avenue. While she did not use the term "reasonable scientific certainty" to state her conclusions, her opinion was clearly admissible to the jury. Therefore, we cannot say that the trial court abused its discretion in denying appellant's motion to strike.
 {¶ 64} Appellant also argues that Roggenbeck failed to follow the dictates of Evid. R. 703 and 705 in her testimony. After being vetted as an expert pursuant to Evid. R. 702, an expert witness is required pursuant to Evid. R. 703 to base his or her opinion on facts or data "perceived by the expert or admitted in evidence at the hearing." Evid. R. 705 then requires the expert to testify as to his or her opinion only after disclosing the underlying facts or data behind the expert's reasoning.
 {¶ 65} "When an expert bases his opinion on facts he perceived or data admitted in evidence at the hearing and the facts or data are identified before the opinion is offered, Evid. R. 703 and 705 are satisfied."Smith v. Cincinnati Gas Elec. Co. (1991), 75 Ohio App.3d 567. Just because facts or data — on which an expert relies on for his or her opinion-are not admitted into evidence, it does not mean that the expert did not utilize those facts and data when forming his or her opinion. See State v. Vistell (Mar. 27, 1985), Summit App. No. 11813,1985 WL 10647 at *3 (affirming the trial court's denial of a motion to strike when a fingerprint card on which the expert relied was withdrawn from evidence because the appellate court noted that when the expert formed his opinion that the fingerprints found on the evidence matched the those of the defendant, the expert had the fingerprint card in front of him).
 {¶ 66} Appellant contends that while the state admitted all of the items from 225 Cereal Avenue which were tested for prints, the state failed to introduce the fingerprint cards on which Roggenbeck relied to form her opinion. By not allowing the cards into evidence, appellant argues that Roggenbeck was unable to authenticate them or testify to their *Page 22 
accuracy, and the jury was unable to review them to make their own assessment.
 {¶ 67} Fingerprint cards are often admitted into evidence during the examination of a fingerprint expert. The record indicates that the trial court had a discussion with counsel, including appellant's trial counsel, in chambers regarding the origin of the fingerprint cards. During Roggenbeck's cross-examination, co-defendant Garcia's attorney began questioning her about the fingerprint cards, and where she obtained them. Garcia's attorney was interrupted by the trial court and called to a side-bar with the other attorneys. The following conversation ensued:
 {¶ 68} "THE COURT: Here is the problem I've got. In chambers we talked about not identifying where those prints came from, where they were from.
 {¶ 69} "MR. SCACCIA [appellant's trial counsel]: I agree.
 {¶ 70} "THE COURT: Now Mr. Cunningham is trying to paint the picture that they were submitted by the Butler County Sheriff's Office, and that is not true.
 {¶ 71} "MR. SCACCIA: She can't testify to that.
 {¶ 72} "THE COURT: And while we are not going to get into where they came from, I don't want this jury to think that — I don't want them to get a false impression that they were submitted by the Butler County Sheriff's Office because my understanding from the pretrial discussion is that Craft and Harry have probably got records, and that is where they got these from."
 {¶ 73} Appellant cannot now argue that the fingerprint cards should have been submitted into evidence when it is clear from the record that appellant's trial counsel — most likely for tactical reasons — did not want them admitted. Roggenbeck's testimony indicated that she clearly relied on the "known" fingerprints of appellant and his co-defendants when she analyzed the prints she took from the seized evidence. Roggenbeck indicated the facts and data upon which she was relying — the fingerprint cards and the latent prints she *Page 23 
recovered from the drug packaging and the weapons — and she formed an opinion, after she perceived the evidence that one of the prints belonged to appellant. Therefore, the requirements of Evid. R. 703 and 705 were met and the trial court properly denied appellant's motion to strike Roggenbeck's testimony. Appellant's fifth assignment of error is hereby overruled.
 {¶ 74} Judgment affirmed in part and reversed in part and remanded for the trial court to resentence appellant consistent with the Ohio Supreme Court's holding in State v. Cabrales, 118 Ohio St.3d 54.
WALSH, P.J., and BRESSLER, J., concur.
[1] The affidavit incorrectly stated certain relationships between Craft and his relatives. The affidavit stated Sandra Ashdown was his stepmother, when in fact she is his mother, and Donald Craft was his father, when in fact he is Craft's uncle. In order to stem any further confusion we have simply referred to these persons, and others, as relatives.
[2] This final statement in the affidavit was handwritten into the affidavit by Deputy Nerlinger at the request of the issuing judge.
[3] Cabrales overrules, in part, our decision in State v.Alvarez, Butler App. No. CA2003-03-067, 2004-Ohio-2483, where we upheld separate convictions and sentences for possession and trafficking. *Page 1